FOURTH DEPARTMENT, OCTOBER, 2004

(October 1, 2004)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH J. PAULMAN, Appellant. [782 NYS2d 884]—

Appeal from a judgment of the Ontario County Court (Craig J. Doran, J.), rendered December 3, 2002. The judgment convicted defendant, upon a jury verdict, of sodomy in the first degree, sexual abuse in the first degree (two counts), sodomy in the second degree, rape in the second degree (two counts), sexual abuse in the second degree (two counts), forcible touching and endangering the welfare of a child (four counts).

It is hereby ordered that the judgment so appealed from be and the same hereby is affirmed.

Memorandum: Defendant appeals from a judgment convicting him after a jury trial of, inter alia, sodomy in the first degree (Penal Law former § 130.50 [3]). We reject the contention of defendant that reversal is required based on County Court's refusal to suppress his statements to police wherein he admitted various crimes against four young female victims. Defendant initially made incriminating statements to a New York State Trooper who responded to a call from defendant reporting that he had been threatened. The court properly determined that those initial statements made by defendant in his apartment were not the product of custodial interrogation and thus *Miranda* warnings were not required with respect to them (*see People v Kaufman*, 288 AD2d 895, 896 [2001], *lv denied* 97 NY2d

684 [2001]). Defendant then agreed to accompany the Trooper and her partner to the State Police barracks in order to speak to an investigator. When they arrived at the barracks and were waiting for the investigator to arrive, the Trooper gave defendant a pad of paper and a pen and asked him to "jot" down what he had told her in his apartment. Defendant spent approximately 15 to 30 minutes memorializing parts of his oral admissions, during which time the investigator arrived. No police personnel discussed the allegations with defendant or asked questions of him during that period of time. After completing that written statement, defendant, at his request, was provided with food and soda and, approximately 30 minutes later, defendant accompanied the investigator to the investigator's office. The investigator advised defendant of his *Miranda* rights and, after waiving his rights, defendant made oral admissions that included his earlier admissions. Prior to reducing his statement to the investigator to writing, defendant was again advised of his *Miranda* rights, which were in writing, and he again waived his rights. In that written statement following his admissions to the investigator, defendant first admitted the allegations of sodomy with respect to the four-year-old victim.

Defendant contends that the request for a written summary of his initial noncustodial admissions constituted custodial interrogation and that the court therefore erred in failing to suppress that written statement and the statements that followed. We agree with defendant that his written summary was a response to custodial interrogation and thus should have been suppressed. The court properly concluded that defendant was in custody when he was asked to provide that written summary (*see generally People v Yukl*, 25 NY2d 585, 589 [1969], *rearg denied* 26 NY2d 845 [1970], *cert denied* 400 US 851 [1970]), but erred in further concluding that the written summary was not the product of interrogation. Rather, the record establishes that the written summary was the result of "express questioning or its functional equivalent" (*Rhode Island v Innis*, 446 US 291, 300-301 [1980]; *see generally People v Lanahan*, 55 NY2d 711, 713 [1981]; *People v Ferro*, 63 NY2d 316, 322-323 [1984], *cert denied* 472 US 1007 [1985]).

Contrary to the People's contention, we further conclude that there was no "definite, pronounced break in the interrogation [such] that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning" before he made the oral and written statements that followed the initial written statement (*People v Chapple*, 38 NY2d 112, 115 [1975]; *see People v Moyer*, 292 AD2d 793, 795

[2002]; *see also People v Jordan*, 190 AD2d 990 [1993], *affd* 83 NY2d 785 [1994]). We nevertheless conclude, however, that the court properly refused to suppress those subsequent statements. Defendant's initial written statement was limited to the voluntary, noncustodial admissions that defendant made to the Trooper at his home, and no further questioning preceded that statement. Further, each of the statements that followed the initial written statement was made after defendant was fully advised of his *Miranda* rights. "A defendant who voluntarily confesses in a noncustodial setting should not be heard to complain that a subsequent confession following full *Miranda* warnings was tainted by an intervening confession that was elicited [without *Miranda* warnings]" (*People v Gomez*, 192 AD2d 549, 550 [1993], *lv denied* 82 NY2d 806 [1993]). Thus, we conclude under the circumstances of this case that "the voluntariness of the defendant's [subsequent] statements [is] so apparent that [they] need not be suppressed because of the [absence of] . . . warnings preceding his . . . [initial written] statement" (*id.*; *see Kaufman*, 288 AD2d at 896-897).

In light of the evidence of defendant's first, third and fourth statements, which the court properly refused to suppress, along with the testimony of the respective victims, we conclude that the error in failing to suppress defendant's second statement is harmless beyond a reasonable doubt (*see People v Crimmins*, 36 NY2d 230, 237 [1975]; *People v Bastian*, 294 AD2d 882, 884 [2002], *lv denied* 98 NY2d 694 [2002]).

Finally, the sentence is not unduly harsh or severe.

All concur except Scudder, J., who concurs in the result in the following Memorandum: I agree with the majority that County Court erred in failing to suppress the unwarned written statement made by defendant when he was asked to "jot" down what he had told the State Trooper at his apartment but that the admission of that statement in evidence constitutes harmless error (*see People v Crimmins*, 36 NY2d 230, 237 [1975]; *People v Bastian*, 294 AD2d 882, 884 [2002], *lv denied* 98 NY2d 694 [2002]). Although I further agree with the majority's conclusion that the court properly refused to suppress the two statements that followed the unwarned written statement, each of which was preceded by proper *Miranda* warnings, I cannot agree with the majority's reasoning in reaching that conclusion. The majority concludes that those subsequent statements were made during a continuous chain of events that included the statement given by defendant while in custody and without the benefit of *Miranda* warnings, but the majority nevertheless concludes that, under the circumstances herein, the statements were

properly admitted. In my view, that conclusion is erroneous because "the mandate of NY Constitution, article I, § 6 that '[n]o person . . . shall . . . be compelled in any criminal case to be a witness against himself' would have little deterrent effect if the police know that they can as part of a continuous chain of events question a suspect in custody without warning, provided only [that] they thereafter question him or her again after warnings have been given" (*People v Bethea,* 67 NY2d 364, 366 [1986]; *see People v Chapple,* 38 NY2d 112, 115 [1975]; *People v Champion,* 273 AD2d 899 [2000], *lv denied* 96 NY2d 733 [2001]). Thus, pursuant to that well-established precedent, statements made by a defendant after *Miranda* warnings were properly administered should be suppressed if the statements were the result of questioning that was part of a continuous chain of events subsequent to the defendant's unwarned statement made while in custody.

To support its conclusion, the majority relies upon *People v Kaufman* (288 AD2d 895 [2001], *lv denied* 97 NY2d 684 [2001]) and *People v Gomez* (192 AD2d 549, 550-551 [1993], *lv denied* 82 NY2d 806 [1993]). In my view, the majority expands the holdings in those cases beyond their facts, and beyond the intent of this Court in *Kaufman* and the apparent intent of the Second Department in *Gomez.* Neither *Kaufman* nor *Gomez* involved statements made by the defendant as a result of questioning that was part of a continuous chain of events after an *unwarned* custodial statement was made. Rather, in both cases, the defendants' initial custodial statements were made after the administration of *Miranda* warnings that were merely "technically deficient" because the police officers recited them from memory (*Gomez,* 192 AD2d at 550; *see Kaufman,* 288 AD2d at 896). Here, it is undisputed that *no* warnings were given before the initial custodial statement at issue. In any event, I further note that both of those cases strictly limited the holdings to the unique circumstances therein.

It is undisputed that the 18-year-old defendant herein was taken by two State Troopers to the State Police barracks at 3:00 A.M. and that defendant did not have the benefit of any *Miranda* warnings before he made his initial custodial statement. Thus, it cannot be said that technically deficient warnings were given, to bring this case within the holdings of *Kaufman* and *Gomez.* I note that the Second Department wrote in *Gomez* that "[a] defendant who voluntarily confesses in a noncustodial setting should not be heard to complain that a subsequent confession following full *Miranda* warnings was tainted by an intervening confession that was elicited following technically deficient *Mi-*

*randa* warnings" (*id.* at 550), a proposition with which I agree. The majority herein necessarily substitutes the phrase "without *Miranda* warnings" for the phrase "technically deficient *Miranda* warnings." In my view, however, those phrases are not interchangeable. Indeed, both *Chapple* and *Bethea* address the precise complaint herein, i.e., that no warnings, as opposed to technically deficient warnings, preceded defendant's initial custodial statement. "Warnings, to be effective under the combined holdings in *Miranda* and *Westover* [*v United States,* 384 US 436 (1966)], must *precede* the subjection of a defendant to questioning. Later is too late, unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning" (*Chapple,* 38 NY2d at 115). Thus, in analyzing this issue pursuant to well-established precedent, a court would have to determine either that the statements herein that followed the initial unwarned custodial statement were part of a continuous chain of events, in which case they would have to be suppressed (*see Bethea,* 67 NY2d at 367-368; *Chapple,* 38 NY2d at 115), or that the subsequent statements were sufficiently attenuated from the unwarned custodial statement so as to remove the taint of that unwarned statement (*see People v Smith,* 275 AD2d 951 [2000], *lv denied* 96 NY2d 739 [2001]; *People v Bolus,* 185 AD2d 1007, 1008 [1992], *lv denied* 81 NY2d 785 [1993]).

I disagree with the majority that the fact that the initial unwarned written statement "was limited to the voluntary, noncustodial admissions that defendant made to the Trooper at his home, and no further questioning preceded that statement" is dispositive of the issue whether the subsequent statements given after proper *Miranda* warnings were tainted by the initial unwarned written statement. Rather, in my view, the issue is whether the subsequent statements were tainted because defendant may have made those statements "on constraint" of the initial unwarned written statement made while in custody (*Chapple,* 38 NY2d at 114). In other words, regardless of whether the initial unwarned written statement reiterated his earlier oral statement made in a noncustodial setting, that written statement, made in a custodial setting, may have "let 'the cat out of the bag' and affected his subsequent statement[s]" by virtue of the custodial setting (*People v Tanner,* 30 NY2d 102, 106 [1972]; *cf. People v Jamison,* 307 AD2d 368, 369 [2003], *lv denied* 100 NY2d 643 [2003]).

In my view, however, the record establishes that the subsequent statements were sufficiently attenuated so as to remove

the taint from the initial unwarned custodial statement inasmuch as there was a "definite, pronounced break" between the time of defendant's initial unwarned custodial statement and the time of the subsequent statements (*Chapple,* 38 NY2d at 115). Defendant was questioned by a different person, in a different place, albeit within the State Police barracks, after spending approximately 30 minutes eating pizza and drinking soda, during which time the police did not attempt to elicit any information from him. In my view, "[these] differences . . . constitute such a 'definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning' " (*Smith,* 275 AD2d at 951; *see Bolus,* 185 AD2d at 1008). Thus, although I agree with the majority that the court properly refused to suppress defendant's third and fourth statements, I write separately to express my concern that the reasoning underlying the majority's decision herein results in an erosion of the protections established by *Miranda* and its progeny. Present—Pigott, Jr., P.J., Hurlbutt, Scudder and Lawton, JJ.