[840 NE2d 1014, 807 NYS2d 1]

The People of the State of New York, Respondent, v Craig Lewis, Appellant.

Argued October 18, 2005; decided November 21, 2005

**POINTS OF COUNSEL**

*Center for Appellate Litigation,* New York City (*Carl S. Kaplan* and *Robert S. Dean* of counsel), for appellant. I. The trial court's charge, as a whole, could have misled the jurors into thinking that when defendant unlawfully enters an apartment in violation of orders of protection, the same act satisfies the intent-to-commit-a-crime-therein element of burglary, thus rendering the charge reversible error. (*People v Gaines,* 74 NY2d 358; *People v Blacknall,* 63 NY2d 912; *People v Clemins,* 158 AD2d 854; *People v Polanco,* 279 AD2d 307; *People v Cahill,* 2 NY3d 14; *People v Martinez,* 83 NY2d 26, 511 US 1137; *Yates v United States,* 354 US 298; *Burks v United States,* 437 US 1; *Stromberg v California,* 283 US 359; *People v Graves,* 76 NY2d 16.) II. The evidence was legally insufficient to prove that appellant intended to commit a crime within the apartment, and there is a reasonable doubt as a matter of law as to that element, where there was no evidence of an intent to commit a "further, and more serious [ ]" violation of the court orders, and appellant merely went to bed after entering the apartment. (*People v Polanco,* 279 AD2d 307; *Jackson v Virginia,* 443 US 307; *Fiore v White,* 531 US 225; *People v Gaines,* 74 NY2d 358; *People v Jones,* 184 AD2d 383; *People v Konikov,* 160 AD2d 146;

*People v Barnes,* 50 NY2d 375; *People v Castillo,* 47 NY2d 270; *People v Gilligan,* 42 NY2d 969; *People v Lambert,* 232 AD2d 225.)

*Robert M. Morgenthau, District Attorney,* New York City (*David M. Cohn* and *Mary C. Farrington* of counsel), for respondent. I. The evidence at trial overwhelmingly proved defendant's guilt of burglary. (*People v Schulz,* 4 NY3d 521; *People v Norman,* 85 NY2d 609; *Jackson v Virginia,* 443 US 307; *People v Santi,* 3 NY3d 234; *People v Williams,* 84 NY2d 925; *People v Mahboubian,* 74 NY2d 174; *People v Mackey,* 49 NY2d 274; *People v Gilligan,* 42 NY2d 969; *People v Barnes,* 50 NY2d 375; *People v Folsom,* 252 AD2d 834.) II. The trial court's burglary charge was proper. (*People v Clemins,* 158 AD2d 854; *People v Samuels,* 99 NY2d 20; *People v Hills,* 95 NY2d 947; *People v Coleman,* 70 NY2d 817; *People v Ladd,* 89 NY2d 893; *People v Radcliffe,* 232 NY 249; *People v Polanco,* 279 AD2d 307; *People v Tillman,* 273 AD2d 913; *People v Folsom,* 252 AD2d 834.)

### OPINION OF THE COURT

ROSENBLATT, J.

A key element of burglary, which elevates it from trespass, is the defendant's intent to commit a crime inside a building. A defendant who knowingly enters or remains unlawfully in a dwelling is guilty of second-degree trespass, a class A misdemeanor (Penal Law § 140.15). That crime is elevated to second-degree burglary when the defendant intends to commit a crime inside the dwelling (Penal Law § 140.25 [2]).[1]

This appeal implicates whether the violation of an order of protection may serve as the intended crime underlying a burglary. We hold that the "intent to commit a crime therein" element of burglary (Penal Law § 140.25) may be satisfied by a defendant's intent to engage in conduct prohibited by an order of protection while in the banned premises. That element, however, is not satisfied solely by a defendant's intent to violate an order of protection by entering the dwelling that the order of protection declares off limits.[2]

We further conclude that the prosecution presented legally sufficient evidence that defendant, at the time he entered,

---

1. The intent to commit a crime in the dwelling must be contemporaneous with the entry (*People v Gaines,* 74 NY2d 358, 362-363 [1989]).

2. Such conduct is punishable, however, as criminal contempt under article 215 of the Penal Law and criminal trespass under article 140 of the Penal Law.

intended to engage in conduct prohibited by orders of protection in the victim's dwelling after entry.

## I.

Defendant was arrested three times in 2001 following incidents at complainant's apartment. In January 2001, he was arrested for damaging her property. Nevertheless, she allowed defendant to move into her apartment, in February 2001, after he lost his job. In April 2001, the Criminal Court of the City of New York issued an order of protection requiring him to stay away from her and from her home until April 25, 2004.[3] However, complainant once more allowed defendant to return to the apartment.

In the early hours of July 24, 2001, defendant and complainant got into an argument at her apartment and defendant struck her over the head with a plate. She was taken to the hospital and received six stitches. Defendant was again arrested. On July 30, 2001, Criminal Court issued another order of protection.[4] Again, she allowed defendant back into her apartment a few days after he got out of jail.

On August 17 or 18, 2001, complainant told defendant to leave her residence, took her apartment keys from him and went to stay with a friend. On August 19, 2001, while both orders of protection were in effect, defendant entered her apartment without her knowledge. The jury heard evidence that the fire escape ladder leading to the apartment was pulled down to street level and that one of her apartment windows showed signs of tampering.

In the early hours of August 20, 2001, complainant returned to her apartment and found defendant there. She told him to get out and, when he refused and began swearing at her, she went downstairs to call the police from a pay phone. Defendant kicked her and continued to swear at her as she went down the steps. Later, the police found her pocketbook and some of her papers scattered on the ground below her apartment windows.

---

3. In addition to the stay-away provisions, the order of protection required defendant to "[r]efrain from any contact including mail, telephone, e-mail, voice-mail or other electronic communication with" the complainant and to "[r]efrain from assault, stalking, harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats or otherwise interfering with" her.

4. This order of protection contained the identical provisions as the extant order (see n 3).

Police arrested defendant a third time. With respect to the last incident, defendant was charged with burglary in the second degree (Penal Law § 140.25 [2]) and criminal contempt in the second degree (Penal Law § 215.50 [3]).[5]

During trial, defense counsel asked the trial judge to instruct the jury that the "intent to commit a crime therein" element of burglary could be satisfied only if it were proven that, at the time of entry, defendant intended to commit some crime in addition to unlawful entry. The trial court refused the request, and instead gave a standard jury instruction on second-degree burglary, largely based on CJI2d (NY) Penal Law § 140.25 (2) (revised Oct. 25, 2001). The court instructed the jury that there are three elements of second-degree burglary (Penal Law § 140.25 [2]): first that defendant entered a dwelling, second that he knew the entry to be unlawful and, third, and here most critically, that he intended "to commit a crime *therein*" (emphasis supplied).

With only the burglary count undecided, the jury returned a partial verdict acquitting defendant of assault (relative to the July 24, 2001 event) but finding him guilty of criminal contempt in the first degree (Penal Law § 215.51 [b] [v]) for the July 24, 2001 event and criminal contempt in the second degree (Penal Law § 215.50 [3]) for the August 20, 2001 episode.[6] As it was about to adjourn for the day, the jury delivered a note asking about the relevance of defendant's criminal contempt to the "intent to commit a crime therein" element of burglary.

The prosecutor suggested instructing the jury that criminal contempt can be the basis for the "intent to commit a crime therein" element of burglary. Defendant's attorney acquiesced by telling the trial court that he did not "have to[o] much problem" with the prosecutor's proposal. Defense counsel then asked for the following formulation: "you should say, if it is your general question as to whether . . . the crime constitut-[ing] contempt can be the basis for a burglary charge, the answer is yes." The trial court followed defense counsel's proposal almost to the word. The jury then quickly reached a

---

5. The indictment and trial also covered the July 24, 2001 incident, for which defendant was charged with assault in the second degree (Penal Law § 120.05 [2]) and criminal contempt in the first degree (Penal Law § 215.51 [b] [v]). This appeal does not involve those crimes. We address only the burglary conviction arising out of the events of August 20, 2001.

6. First-degree criminal contempt is more serious because it contemplates physical contact or attempted or threatened physical contact.

verdict finding defendant guilty of second-degree burglary (Penal Law § 140.25 [2]).

The Appellate Division affirmed and a Justice of that Court granted defendant leave to appeal. We affirm.

## II.

Defendant claims that the burglary conviction is flawed because the court had improperly refused to instruct the jury that intent to enter the banned premises cannot alone satisfy the "intent to commit a crime therein" element of burglary. On this record, defendant's claim fails. Appropriately, the court charged the jury as to the three elements of burglary, the third being the intent to commit a crime *therein*. Indeed, the court used the word "therein" five times in its initial instruction regarding burglary. By tracking the statute and the CJI language, the court conveyed to the jury that it could not find defendant guilty unless it concluded that he intended to commit a crime inside the apartment, after having entered it.

When the jury later presented its note seeking supplemental instruction, defense counsel expressly asked the court to tell the jury that a violation of an order of protection can "be the basis for a burglary charge." Defendant therefore forfeited appellate review of the issue of whether the trial court's charge, as a whole, could have misled the jury into thinking that intent to enter an apartment in violation of an order of protection could alone satisfy the "intent to commit a crime therein" element of burglary.

While it is true that an attorney need not repeatedly protest a court's clear ruling, defense counsel's formulation of the supplementary instruction went far beyond mere failure to protest and constitutes a forfeiture. Indeed, the court fully adopted the defendant's language. He cannot now be heard to complain that the court failed to explain to the jury that the "intent to commit a crime therein" element of burglary cannot be satisfied solely by proof that defendant intended to enter the apartment in violation of orders of protection.

## III.

Unlawful entry cannot itself be used as the sole predicate crime in the "intent to commit a crime therein" element of burglary. If it could, every violation of a do-not-enter provision of an order of protection would become a burglary the instant defendant knowingly entered upon the banned premises. Here,

however, evidence presented to the jury was legally sufficient to prove that when defendant entered the apartment, he intended to commit a crime in the apartment other than his trespass.

The jury heard evidence that defendant was arrested in January 2001 for damaging complainant's property and pleaded guilty to the charge; that, less than a month before the August 20, 2001 incident, defendant got into an argument with the victim in her apartment and struck her over the head with a plate, causing her serious injury; that, at the time of the August 20, 2001 incident, the fire escape ladder leading to the victim's apartment had been pulled down to street level, and one of her apartment windows showed signs of tampering; that, at the time of the August 20, 2001 incident, complainant's pocketbook and some of her papers were strewn on the ground below her apartment windows; that, in the early hours of that day, defendant swore at the victim when she told him to leave her apartment and kicked her as she went downstairs to call the police; and that, as he was being arrested, defendant told her "You are through" or "You're going to pay for this."

This evidence enabled the jury to infer that defendant intended to commit a crime inside the apartment, by violating the orders of protection in a manner that went beyond trespass. The People were required to allege and prove only defendant's general intent to commit a crime in the apartment (in addition to unlawful entry itself), not his intent to commit a specific crime (see People v Mackey, 49 NY2d 274, 278-281 [1980]). "In order to secure a conviction for burglary, the People need only allege and prove a knowing and unlawful entry coupled with an intent to commit a crime therein. There is no requirement that the People allege or establish what particular crime was intended" (People v Mahboubian, 74 NY2d 174, 193 [1989]).[7]

There was evidence enabling the jury to conclude that, when he entered the apartment, defendant intended to harass, menace, intimidate, threaten or interfere with complainant in her apartment, in express violation of the terms of the orders of protection (other than those barring entry). Those acts are distinct from the trespass element of burglary and, when prohibited by an order of protection or when independently

---

7. If the People had expressly limited their theory of the "intent to commit a crime therein" element to a particular crime, then they would have had to prove that the defendant intended to commit that crime (People v Barnes, 50 NY2d 375, 379 n 3 [1980]). They did not.

criminal, can serve as predicate crimes for the "intent to commit a crime therein" element of burglary.

## IV.

In sum, defendant forfeited his objection to the trial court's jury charge and fails to demonstrate that the evidence presented against him was legally insufficient to prove that he unlawfully entered the victim's apartment intending "to commit a crime therein."

Accordingly, the order of the Appellate Division should be affirmed.

R.S. SMITH, J. (dissenting). I agree with the majority that the evidence was sufficient to support defendant's burglary conviction. I also agree that defendant's violation of an order of protection by entry into the complainant's home cannot be a basis for finding the "intent to commit a crime" element of burglary in this case. I think the latter holding requires us to reverse defendant's conviction.

Defendant asked for a correct instruction to the effect that the People must show more than unlawful entry. The trial court refused the instruction, and later, in response to a question, told the jury the exact opposite. I do not believe defendant forfeited appellate review of this error, and I therefore dissent.

## I

Before I describe my disagreement with the majority, I think my agreement on the sufficiency of the evidence needs a word of explanation. As I understand the Court's holding on this issue, it does not imply that the "intent to commit a crime" element of burglary could be satisfied by conduct (beyond entry to the premises) that would be innocuous if the order of protection did not prohibit it.

In the case before us, as the majority correctly says, the jury could have found that defendant entered the apartment intending "to harass, menace, intimidate, threaten or interfere with complainant" (majority op at 552). The majority is also correct, I believe, in holding that that intention would be an "intent to commit a crime" and thus would support a burglary conviction. It is true, as the majority says, that each of these acts was prohibited by the order of protection, so that in performing any of them defendant would have committed criminal contempt. But it is probably also true (depending on how broadly

"interfere with" is read) that each of these acts would be criminal even if the order of protection did not exist.

It is easy to imagine a different, more troubling, case. The order of protection here required defendant, among other things, not to "contact" complainant. It might be argued that if he entered the apartment with the intention of speaking to her, he entered unlawfully with the intent to commit criminal contempt by an act that went beyond entry. Whether that intention could support a burglary conviction is an issue not now before us, and I do not think the majority addresses it.

## II

Defendant asked the trial court to instruct the jury "that the intent-to-commit-a-crime-therein element of the burglary statute cannot be satisfied merely by showing the defendant's intent to violate the court orders by going to, or entering, the complainant's apartment." The People now concede, and this Court unanimously agrees, that that proposed charge would have stated the law correctly. The trial court, however, rejected the proposed charge with the observation: "I disagree. . . . [Y]ou just don't have to do anything more . . . . [B]eing there in violation of the Order of Protection . . . is a burglary should the jury decide the facts support it." The court's view of the law was plainly incorrect.

Though its reasoning was unsound, the trial court may not have erred in refusing to give defendant's proposed charge, and instead simply describing the elements of second-degree burglary. A charge is not necessarily incorrect merely because it follows the statutory language and does not elucidate it "to the fullest possible extent" (*People v Samuels*, 99 NY2d 20, 25 [2002]). Thus it might be concluded, as the Appellate Division majority did conclude, that "the court delivered a correct main charge, even if it did so inadvertently" (13 AD3d 208, 213 [2004]).

This issue became academic when the jury later asked the very question defendant's proposed charge had been designed to anticipate. As the prosecutor summarized the jury's question, the jury wanted to know whether "the unlawful entry . . . can be the basis of intending to commit the crime therein." Referring to the court's earlier statements on the subject, the prosecutor said: "I thought we had a lot of discussion in the charge conference, the answer was yes."

The prosecutor was right in saying that the trial court had already rejected defendant's argument on this issue. No doubt for

that reason, defendant did not reargue the point when discussing the jury's note. Implicitly accepting the prosecutor's statement that the court had already ruled, defendant's counsel assumed that the court would give an affirmative answer to the jury's question, and suggested a way of wording it, which the court accepted. In doing this, the majority now holds, defendant forfeited his right to complain of the court's error.

I cannot agree. A waiver or forfeiture may occur when a defendant requests or endorses a ruling of which he later complains (*see People v White*, 53 NY2d 721, 723-724 [1981]). The reason for this rule is that a defendant should not be able to obtain a reversal based on an error for which he was responsible (*see People v Shaffer*, 66 NY2d 663, 665 [1985]; *People v Ford*, 62 NY2d 275, 283 [1984]; *People v Aezah*, 191 AD2d 312, 313 [1st Dept 1993]). But defendant did not lead the trial court into error here—the court had already stated unequivocally its mistaken understanding of the law, and the defendant's attempt to talk the court out of it had already failed. Thus the governing rule here is the one the majority states, but does not apply: "an attorney need not repeatedly protest a court's clear ruling" (majority op at 551) (*see also People v Mezon*, 80 NY2d 155, 160-161 [1992]).

Of course it would have been a good idea for defendant's counsel, in his comment on how to respond to the jury note, to err on the side of caution by restating the position he had already argued. He might have said, for example: "As you know, your Honor, I think the correct answer to the question is no. But since you have already decided the correct answer is yes, I suggest that you answer in the following language." But if he had taken this more prudent course, defense counsel would only have been reciting what everyone in the courtroom knew and the record made clear already. I cannot join the majority in holding that he forfeited his client's right by failing to perform this ritual.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO and READ concur with Judge ROSENBLATT; Judge R.S. SMITH dissents in a separate opinion in which Judge G.B. SMITH concurs.

Order affirmed.