[953 NE2d 779, 929 NYS2d 541]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REYNALDO CONCEPCION, Appellant.

Argued April 28, 2011; decided June 14, 2011

## POINTS OF COUNSEL

*Appellate Advocates*, New York City (*John Gemmill* and *Lynn W.L. Fahey* of counsel), for appellant. I. The Appellate Division lacked jurisdiction to decide whether appellant consented to the search of his van when the issue of consent had not been determined adversely to him in the trial court. (*People v LaFontaine*, 92 NY2d 470; *People v Romero*, 91 NY2d 750; *People v Goodfriend*, 64 NY2d 695; *People v Karp*, 76 NY2d 1006; *People v Cade*, 74 NY2d 410; *People v Colon*, 65 NY2d 888; *People v Falquez*, 66 AD3d 918; *People v Fields*, 151 AD2d 598; *People v Nieves*, 67 NY2d 125; *People v Ryan*, 12 NY3d 28.) II. Appellant was denied the effective assistance of counsel by his attorney's failures to (a) make any argument in support of her motion to suppress the evidence, (b) object to inadmissible hearsay evidence, and (c) object to the prosecutor's improper summation arguments. (*People v Baldi*, 54 NY2d 137; *Strickland v Washington*, 466 US 668; *People v Montgomery*, 293 AD2d 773; *People v Donovan*, 184 AD2d 654; *People v Vauss*, 149 AD2d 924; *People*

*v Rodriguez*, 94 AD2d 805; *People v Dean*, 50 AD3d 1052; *People v Echavarria*, 167 AD2d 138; *People v Wallace*, 187 AD2d 998; *People v Lee*, 129 AD2d 587.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Thomas S. Burka* and *Leonard Joblove* of counsel), for respondent. I. The trial court properly denied defendant's motion to suppress the cocaine recovered from his van. In any event, any error in the admission of that evidence was harmless with respect to the convictions of criminal possession of a weapon and assault. (*People v LaFontaine*, 92 NY2d 470; *Schneckloth v Bustamonte*, 412 US 218; *People v Alvaranga*, 84 NY2d 985; *People v Thatch*, 71 NY2d 906; *People v Meredith*, 49 NY2d 1038; *People v Craig*, 78 NY2d 616; *Matter of Buffalo Columbus Hosp. v Axelrod*, 165 AD2d 605; *People v Stirrup*, 91 NY2d 434; *People v Giordano*, 87 NY2d 441; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509.) II. Defendant received effective assistance of counsel. (*Strickland v Washington*, 466 US 668; *People v Baldi*, 54 NY2d 137; *Bierenbaum v Graham*, 607 F3d 36; *Williams v Taylor*, 529 US 362; *People v Turner*, 5 NY3d 476; *People v Baker*, 14 NY3d 266; *People v Caban*, 5 NY3d 143; *People v Henry*, 95 NY2d 563; *Greiner v Wells*, 417 F3d 305, 546 US 184; *Rosario v Ercole*, 601 F3d 118.)

### OPINION OF THE COURT

Read, J.

The outcome of this appeal is dictated by our decision in *People v LaFontaine* (92 NY2d 470 [1998]). There, Supreme Court denied suppression of plastic bags of cocaine and drug paraphernalia seized after the defendant's arrest, basing its ruling on one of several alternative grounds put forward by the People to support the arrest's lawfulness (159 Misc 2d 751 [1993]). LaFontaine subsequently pleaded guilty to third-degree criminal possession of a controlled substance.

On appeal, the Appellate Division, with two Justices dissenting, disagreed with Supreme Court's rationale for its suppression ruling, but upheld denial of suppression anyway, based on a ground explicitly rejected by the trial judge and therefore decided in LaFontaine's favor (235 AD2d 93 [1997]). In short, the Justices in the majority concluded that Supreme Court gave a wrong reason and spurned a right reason on the way to reaching the correct result—i.e., denial of suppression. The dissenting Justices did not believe that denial of suppression was justified by either the trial judge's rationale or the alternative basis

endorsed by the majority. A dissenting Justice granted LaFontaine leave to appeal to us (91 NY2d 883 [1997]).

We did not decide the merits of the suppression debate in the Appellate Division, explaining that CPL 470.15 (1) bars that court from affirming a judgment, sentence or order on a ground not decided *adversely* to the appellant by the trial court, and CPL 470.35 (1) grants us no broader review powers in this regard. We noted that we had previously "construed CPL 470.15 (1) as a legislative restriction on the Appellate Division's power to review issues either decided in an appellant's favor, or not ruled upon, by the trial court" (92 NY2d at 474, citing *People v Romero*, 91 NY2d 750, 753-754 [1998] and *People v Goodfriend*, 64 NY2d 695, 697-698 [1984]). Because we agreed with the Appellate Division's unanimous rejection of Supreme Court's reason for denying suppression—the "only *reviewable* predicate for a lawful arrest"—we reversed the Appellate Division's order affirming the judgment of conviction and sentence, and remitted the matter to the trial judge for further proceedings (*id.* at 472 [emphasis added]).

In this case, after defendant Reynaldo Concepcion was arrested for shooting Stephen Brown, his gray minivan was searched, and a little more than one-half ounce of cocaine was recovered from a compartment behind the ashtray in the front console. Defendant was eventually charged with second-degree attempted murder (Penal Law §§ 110.00, 125.25 [1]); assault in the first, second, and third degrees (Penal Law § 120.10 [1]; § 120.05 [2]; § 120.00 [1]); criminal possession of a weapon in the second, third, and fourth degrees (Penal Law § 265.03 [2]; Penal Law § 265.02 [4], later repealed by L 2006, ch 742, § 1; Penal Law § 265.01 [1]); and criminal possession of a controlled substance in the third, fourth, and seventh degrees (Penal Law § 220.16 [1]; § 220.09 [1]; § 220.03).

When defendant moved to suppress physical evidence (the cocaine), the People argued that he consented to the search of the minivan, or, alternatively, that the drugs were admissible under the inevitable discovery doctrine. Supreme Court denied the motion; the trial judge determined that the People failed to establish defendant's consent, but that the cocaine would have inevitably been discovered during an inventory search.

Following a jury trial, defendant was acquitted of attempted murder and first- and second-degree assault. He was convicted

of second-degree weapon possession, third-degree drug possession and third-degree assault, and Supreme Court sentenced him to concurrent prison terms of 10 years, six years and one year, respectively. Defendant appealed, bringing up for review the denial of his motion to suppress physical evidence.

The People conceded in the Appellate Division that the inevitable discovery doctrine was not applicable, but again argued that defendant consented to the search. The Appellate Division agreed, and so—just as in *LaFontaine*—upheld the denial of suppression on a basis that Supreme Court had squarely rejected, and affirmed the judgment of conviction and sentence (69 AD3d 956 [2d Dept 2010]). After defendant unsuccessfully moved to reargue, in part on the ground that *LaFontaine* barred the Appellate Division from finding that he consented to the search, a Judge of this Court granted him permission to appeal (14 NY3d 886 [2010]).

■ The Appellate Division's decision with respect to suppression was clearly erroneous under *LaFontaine*; i.e., CPL 470.15 (1) precludes that court from affirming denial of suppression on the basis of consent because the trial judge ruled in defendant's favor on this issue. All that remains for us to decide on this appeal, then, is the proper remedy for this mistake. In *LaFontaine* itself, we simply reversed and remitted the matter to Supreme Court for further proceedings on the motion to suppress. But these proceedings were necessarily going to resolve the entire case because LaFontaine only pleaded guilty to a drug crime. That is not what happened here, where defendant was convicted and sentenced for weapon possession and assault as well as for a drug crime. As a result, we must decide whether granting suppression—if this is the decision reached by the trial court on remittal—would be harmless with respect to defendant's conviction for these other crimes.* If harmless, these convictions remain; if not, defendant is entitled to a new trial on the counts of the indictment charging second-degree weapon possession and third-degree assault.

> "Whether an error in the proceedings relating to one count requires reversal of convictions on other jointly tried counts . . . can only be resolved on a case-by-case basis, with due regard for the individual facts of the case, the nature of the error and its

---

* We have examined defendant's claim of ineffective assistance of counsel and consider it to be meritless.

potential for prejudicial impact on the over-all outcome" (*People v Baghai-Kermani*, 84 NY2d 525, 532 [1994]).

"[T]he paramount consideration in assessing" such so-called "spillover error is whether there is a reasonable possibility that the jury's decision to convict on the tainted counts influenced its guilty verdict on the remaining counts in a meaningful way" (*People v Doshi*, 93 NY2d 499, 505 [1999] [internal quotation marks omitted]; *see also People v Daly*, 14 NY3d 848 [2010]).

█ In this case, there is no reasonable possibility that the evidence supporting the potentially tainted count, a drug possession crime related to the cocaine discovered in defendant's vehicle, had a spillover effect on the guilty verdicts for weapon possession and assault, which arose from defendant's shooting of the victim. The proof of these latter crimes was furnished by the testimony of the victim, who knew defendant before he was shot (defendant was his drug supplier). While in an ambulance awaiting transport to the hospital for treatment of his gunshot wound, the victim identified defendant to the police as his assailant by nickname and appearance. He also described the color and make of the shooter's vehicle, which matched the minivan driven by defendant when he was later apprehended by the police.

## The Dissent

The dissent proclaims that our decision in *LaFontaine* was a "mistake," which we have "never followed" (with the caveat that, in some cases, perhaps our laxity might be explained by counsel's neglect to mention the issue) (dissenting op at 201); and laments our unwillingness to overrule *LaFontaine* to correct the "major problem" caused by our folly (*id.* at 207). We address these assertions in turn.

## I.

To support the proposition that we routinely pay no heed to *LaFontaine*, the dissent adduces several cases in the context of arguing that "there is nothing particularly unusual in an appellate court's affirming a decision below on alternative grounds" (dissenting op at 204). True—but merely affirming a case on alternative grounds does not ignore *LaFontaine*, which is only implicated when an appellate court affirms a case on a ground that was not decided *adversely* to the appealing party at the trial level. Or, as we also put it in *LaFontaine*, CPL 470.15 (1) is

"a legislative restriction on the Appellate Division's power to review issues either decided in an appellant's favor, or not ruled upon, by the trial court" (92 NY2d at 474). The dissent elides this point.

For example, in *People v Wheeler* (2 NY3d 370 [2004]), we stated that "Supreme Court denied defendant's motion to suppress . . . in a broad holding *encompassing two legal standards: the protective sweep doctrine . . . and the reasonableness analysis under the Fourth Amendment*" (*id.* at 373 [citations omitted and emphasis added]). The Appellate Division affirmed on the ground of protective sweep, and did not reach the Fourth Amendment claim (302 AD2d 411 [2004]). We rejected the protective sweep analysis, but found the police conduct reasonable under the Fourth Amendment. Thus, although we affirmed the Appellate Division on alternative grounds, neither that court nor this one resolved the case against the defendant on an issue decided in his favor (or not ruled upon) in the criminal court proceedings.

*People v Parris* (4 NY3d 41 [2004]), another case cited by the dissent, seems particularly irrelevant. In *Parris*, we considered whether the defendant was entitled to a reconstruction hearing when minutes of court proceedings were lost, which related to the defendant's right to effective appellate review, a defect that affected the appellate proceedings. In short, there was no "error or defect in the criminal court proceedings which may have adversely affected the appellant" (CPL 470.15 [1]). While our rationale was not the same as the Appellate Division's (at issue was what a defendant needs to show to get a reconstruction hearing), CPL 470.15 (1) and/or *LaFontaine* were not involved.

In *People v Paulman* (5 NY3d 122 [2005]), the hearing court determined that the second of the defendant's four statements was not the product of custodial interrogation, even though he was in custody. The third and fourth statements, which followed the issuance of *Miranda* warnings, were allowed into evidence on the basis that the second statement (and the defendant's first statement) were admissible. The Appellate Division held that the second statement should have been suppressed because it was the product of interrogation, but because the first, third and fourth statements were properly admitted, admission of the second statement was harmless (11 AD3d 878 [2005]). We agreed that the second statement was the product of custodial interrogation and should have been suppressed, but affirmed the admission of the remaining statements because they were

not the product of a "single continuous chain of events" such that the provision of *Miranda* warnings could not be effective (5 NY3d at 150).

This case comes the closest to presenting a *LaFontaine* problem. Having concluded that the second statement was not the product of custodial interrogation, Supreme Court did not need to decide if subsequent Mirandized statements were the product of an un-Mirandized statement. In reaching a contrary determination with regard to the second statement, perhaps the Appellate Division should have remanded the case to the suppression court so that it could determine whether the second statement rendered the subsequent statements inadmissible—an issue that was not resolved in the criminal court proceedings because, as already noted, Supreme Court did not need to do so, given its other rulings. In retrospect, we may have inadvertently overlooked—not deliberately ducked—a *LaFontaine* error. Of course, we focus on arguments made by counsel, and in *Paulman*, both parties asked us to decide attenuation if we concluded that the second statement should be suppressed.

Our decision in *People v Caban* (5 NY3d 143 [2005]) concerning the admission of a coconspirator's statement does not reveal the basis for the trial court's determination to admit the testimony, and therefore does not suggest that we affirmed on a different ground. The mere fact that the *Caban* opinions do not expressly state that the trial court addressed the basis for the appellate decisions does not establish that the trial court did not so rule or that we often deliberately "simply ignore *LaFontaine*'s existence" (dissenting op at 206). And in *People v Carvajal* (6 NY3d 305 [2005]), while we decided that territorial jurisdiction had been established for reasons different from those adduced by the Appellate Division (14 AD3d 165 [2005]), the question of the State's inherent authority to prosecute does not need to be raised or preserved at trial in order to be reviewed on appeal. As a result, no *LaFontaine* error was possible in *Carvajal*.

The dissent's reliance on *People v Lewis* (5 NY3d 546 [2005]) is also misplaced. In *Lewis*, we wrote that "[u]nlawful entry cannot itself be used as the sole predicate crime in the 'intent to commit a crime therein' element of burglary" as otherwise every violation of a do-not-enter provision of an order of protection would support a burglary conviction (*id.* at 551). This statement was in conflict with what the Appellate Division majority said in

response to the opposing view expressed by the dissent (*see* 13 AD3d 208, 211 [1st Dept 2004]). But neither the majority's view of this particular issue, nor ours, formed the basis of either court's legal sufficiency determination. Rather, we concluded, as did the Appellate Division (and the trial court in rejecting the defendant's motion to dismiss), that the evidence was legally sufficient to prove that the defendant intended to commit a crime inside the apartment in a manner that went beyond trespass, based on evidence that the defendant had, among other things, thrown the victim's personal belongings out on the street (5 NY3d at 552; 13 AD3d at 209). Accordingly, we did not affirm the decision below on alternative grounds, but on the same grounds as the lower courts.

In *People v Fuentes* (12 NY3d 259, 263 [2009]), the defendant was unaware of the existence of alleged *Brady* material at trial, and so he did not cross-examine the witness with the information. Discovering the material before delivering his summation, the defendant's attorney moved for a mistrial, and the trial court reserved decision until after the trial was completed. At that time, the court denied the motion on the ground that the document was not material and, as a result, there was no *Brady* violation. The court also concluded that the defendant received the document during trial and had an opportunity to use it. The Appellate Division affirmed (48 AD3d 479 [2009]) on the ground that the defendant had an opportunity to use the document at trial (a ruling that was adverse to the defendant in the criminal court proceedings), while we held that the document was not material (a ruling that was also adverse to the defendant at trial). Thus, although we affirmed on a ground different from the Appellate Division's rationale, we did not contravene *LaFontaine*.

Finally, the dissent expresses fear about the future, now that we have said that CPL 470.15 (1) still means what we said it meant in 1984 (*Goodfriend*) and 1998 (*Romero* and *LaFontaine*) (*see* dissenting op at 207). Whatever course litigation may take in the future, we find it telling that in the past, defense counsel—zealous advocates on their clients' behalf—did not spot the rampant *LaFontaine* error that the dissent now claims existed all along.

## II.

The dissent and the People put forward what they consider to be a better interpretation of CPL 470.15 (1), which would

"permit[ ] what the Appellate Division did in this case" (dissenting op at 203). But in *LaFontaine* we rejected just such a reading of the statute—one that would allow appellate review of any question of law (i.e., any preserved alternative ground for affirmance) so long as it related to the overarching error or defect (e.g., an erroneous suppression ruling). When the People moved in *LaFontaine* to reargue the meaning of CPL 470.15 (1) on just this basis, we denied the motion. And our decision in *LaFontaine* was not a complete surprise, like a bolt of lightning from a clear blue sky. As the dissent acknowledges, *Romero* and *Goodfriend*, which we relied on in *LaFontaine*, both "say . . . that CPL 470.15 means what *LaFontaine* says it means" (dissenting op at 203).

We commented in *LaFontaine* that the statute, as we understood it, might cut against "sensible management" of litigation (92 NY2d at 475). We invited the Legislature to take a look at the matter, noting that "[s]ince the anomaly rests on unavoidable statutory language, any modification would be for the Legislature to change, if it so wishes" (*id.*). So far, the Legislature has not "so wishe[d]." Legislative inaction (which just may, after all, signal satisfaction with CPL 470.15 [1] as interpreted in *LaFontaine*) is not a license for us, in effect, now to tell the Legislature "Never mind," and refashion the statute's settled meaning with the freedom we enjoy in matters of common law. This would be especially imprudent here, where the statute's subject is appellate jurisdiction, which "can never be assumed, unless a statute can be found which *expressly sanctions its exercise*" (*People v Zerillo*, 200 NY 443, 446 [1911] [emphasis added]). In short, this is not, as the dissent remarks, an "excellent case . . . for making an exception" to stare decisis (dissenting op at 204); rather, it is a particularly poor one.

Accordingly, the order of the Appellate Division should be modified by remitting to Supreme Court for further proceedings in accordance with this opinion, and as so modified, affirmed.

SMITH, J. (dissenting). *People v LaFontaine* (92 NY2d 470 [1998]) was a mistake, and a serious one—so serious that in the 13 years since *LaFontaine* was decided we have never followed it, though we have had several cases that called for its application. The People argue here that *LaFontaine* should be overruled. I had hoped that this would provide the occasion for giving that case a decent burial, but the majority ill-advisedly resurrects it.

*LaFontaine* holds that the Appellate Division, in reviewing a judgment, sentence or order of a trial-level criminal court, may not consider any issue of law or fact that the lower court did not decide against the appellant. Thus, under *LaFontaine*, it is impossible for the Appellate Division ever to affirm on a ground that the trial court either did not reach or decided, erroneously, in the appellant's favor. *LaFontaine* also holds that our Court is limited, in reviewing an Appellate Division affirmance of a lower criminal court's judgment, to matters that were "raised or considered" in the Appellate Division, or that could have been raised or considered under *LaFontaine*'s restricted view of the Appellate Division's jurisdiction (*see* 92 NY2d at 474; CPL 470.35 [1]). *LaFontaine* inflicts a large, completely unwarranted and unacceptable impairment on the jurisdiction of appellate courts.

Affirming a lower court judgment on a ground other than the one the lower court relied on is something appellate courts do all the time. It is a gross waste of judicial resources to require a new trial or other proceeding where the lower court has reached the right result, even if it did so for the wrong reason. We recognized in *LaFontaine* that our holding was undesirable from a policy point of view, saying that it "blocks . . . sensible management of this case" (92 NY2d at 475). We thought that we had no choice, however, because "the anomaly rests on unavoidable statutory language" (*id.*).

We did not explain in *LaFontaine* why we thought that statutory language made our holding "unavoidable." In fact, we were wrong to think so. CPL 470.15 (1) says:

> "Upon an appeal to an intermediate appellate court from a judgment, sentence or order of a criminal court, such intermediate appellate court may consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant."

In *LaFontaine*, we apparently assumed that the word "involving" means "claimed to have caused"; in other words, that the Appellate Division is limited to reviewing questions of law and issues of fact which, the appellant claims, caused an error or defect that adversely affected him. But "involving" could equally well be read to mean "necessary to decide a claim of"—so that the Appellate Division could review any issue necessary to a determination of whether there was an error or

defect adversely affecting the appellant. This, it seems to me, is the meaning the Legislature is much more likely to have intended. No one, so far as I know, has ever suggested a reason why the Legislature should forbid appellate courts from affirming on grounds other than those adopted by the court below.

As I read the statutory language, it permits what the Appellate Division did in this case. Appellant claimed, in the Appellate Division, that he had been "adversely affected" by an "error or defect in the criminal court proceedings"—i.e., that Supreme Court had wrongly denied suppression of the cocaine. In order to determine whether appellant was correct, the Appellate Division had to "consider and determine" not only the inevitable discovery issue that Supreme Court decided in the People's favor, but also the issue of consent to the search, on which Supreme Court agreed with appellant. The consent issue was one "involving" appellant's claim that there was an "error or defect in the criminal court proceedings" that adversely affected him. If—as the Appellate Division decided—he did consent to the search, he was not "adversely affected" by any error.

We may have thought, when we decided *LaFontaine*, that our prior cases had foreclosed the issue, but I believe we accepted that conclusion too readily. We relied on two earlier decisions, *People v Romero* (91 NY2d 750 [1998]) and *People v Goodfriend* (64 NY2d 695 [1984]), which do indeed say—also without doing any analysis to demonstrate the point—that CPL 470.15 means what *LaFontaine* says it means. *Romero* is distinguishable; the issue that we found unreviewable there had not been preserved in the trial court (*see* 91 NY2d at 753 [the alternative argument was raised "for the first time" in the Appellate Division]). *Goodfriend* may be distinguishable also. The appeal to the Appellate Division in that case was by the People, from an order vacating a verdict on grounds of repugnancy; it is not clear from our brief memorandum opinion whether the alternative grounds urged by the defendant would logically have supported the trial court's order. Our even briefer memorandum in *People v Karp* (76 NY2d 1006 [1990]) (not cited in the *LaFontaine* opinion) merely relies on *Goodfriend*.

The majority attempts no defense of *LaFontaine*, either as a matter of policy or logic. It merely insists that *LaFontaine* "settled" the law (majority op at 201)—in other words, that, even if it was a mistake, we cannot correct it. Of course, this is the general rule. Stare decisis ordinarily requires us to follow

our previous decisions, even when we think they were wrong. This is an excellent case, however, for making an exception.

While we recognized in *LaFontaine* that our decision would have adverse practical consequences, we underestimated their extent. Indeed, we appeared to think that *LaFontaine* was almost sui generis; our opinion refers to "the unusual procedural posture of this case" (92 NY2d at 472) and to "the exceptional procedural twist" that confronted us (*id.* at 475). But there is nothing particularly unusual in an appellate court's affirming a decision below on alternative grounds. In fact, we have done it ourselves more than half a dozen times since *LaFontaine* was decided, without citing *LaFontaine* once. (Until today, our only citation of *LaFontaine* was in *People v Sparber* [10 NY3d 457, 472 n 8 (2008)], where we distinguished it.)

Thus in *People v Wheeler* (2 NY3d 370 [2004]), a case involving denial of a motion to suppress, Supreme Court and the Appellate Division (302 AD2d 411 [2004]) had denied suppression on a "protective sweep" theory; we affirmed "under a different rationale"—that "the officers legitimately focused their attention on defendant during the execution of the arrest warrants" (2 NY3d at 373, 374). In *People v Parris* (4 NY3d 41 [2004]) we affirmed the denial of a reconstruction hearing "on grounds different from those stated by the Appellate Division" (*id.* at 45). In *People v Paulman* (5 NY3d 122, 128 [2005]), we affirmed the suppression of several of the defendant's statements "[a]lthough our analysis differs in some respects from that of the Appellate Division." In *People v Caban* (5 NY3d 143, 148-150 [2005]), we affirmed a conviction, concluding that certain statements, held below to be within an exception to the hearsay rule (*see People v Caban*, 4 AD3d 274 [1st Dept 2004]), were not hearsay at all. In *People v Carvajal* (6 NY3d 305, 311 [2005]), the Appellate Division affirmed a conviction on the ground "that territorial jurisdiction . . . had been established under CPL 20.20 (1) (a)"; we affirmed under CPL 20.20 (1) (c), "[w]ithout reaching" the CPL 20.20 (1) (a) issue (6 NY3d at 311).

In *People v Lewis* (5 NY3d 546 [2005]), we reviewed an Appellate Division decision affirming a conviction. The Appellate Division had held that entry into premises in violation of a court order could, by itself, satisfy the "unlawful entry" element of the crime of burglary (*see People v Lewis*, 13 AD3d 208, 211 [1st Dept 2004]); we disagreed with that conclusion, but affirmed on the alternative ground that the trial court's charge (to the extent that any objection to it was preserved) was consistent with a correct view of the law. And in *People v Fuentes*

(12 NY3d 259, 263 [2009]), the Appellate Division affirmed a conviction on the ground that defendant had been given an adequate opportunity to use a particular document (48 AD3d 479 [2009]). We affirmed "employing a different rationale" (12 NY3d at 263)—that the document in question was not material (*id.* at 260).

In not one of these post-*LaFontaine* cases did we discuss or cite *LaFontaine.* Today's majority atones for the omission by analyzing all seven. It virtually admits that there was *LaFontaine* error in one of them, *Paulman*, and tries to reconcile the other six with the *LaFontaine* holding. As to three of the cases—*Parris*, *Carvajal* and *Fuentes*—the majority may have a point. (The point is debatable in each, but I will not pause to debate it.) But the majority is clearly wrong about *Wheeler*, *Caban* and *Lewis.*

The majority, relying on our reference in *Wheeler* to the trial court's "broad holding encompassing two legal standards" (2 NY3d at 373), implies that the trial court relied in part on the ground we adopted on appeal (majority op at 198); but the record shows that the trial court relied on a single ground, which we did not endorse: that the actions of the officers were "reasonable" because "the officers were in the same position as when they perform a protective sweep" (*Wheeler*, Appendix for Defendant-Appellant, at A-84). Similarly, the majority speculates that in *Caban* the trial court may have relied on the ground that was the basis for our affirmance (majority op at 199); but the record refutes the speculation, showing that the trial court admitted the evidence in question under the coconspirator exception to the hearsay rule (*Caban*, Appendix for Defendant-Appellant, at A-46)—not for the reason we gave, that the evidence, to the extent relevant to the appeal, was "nonhearsay" (5 NY3d at 150). (The trial court did later say that there were other grounds for its ruling, but it did not say what they were [*Caban*, Appendix at A-48].) In discussing *Lewis*, the majority focuses only on the legal sufficiency issue, ignoring the relevant part of our holding: that the trial court's original charge to the jury was correct, for reasons other than those relied on by the courts below (*see* 5 NY3d at 551; *compare* majority op at 200).

It is true that in only one of the seven post-*LaFontaine* cases I have listed, *Wheeler*, was *LaFontaine* cited to us. Perhaps that should not matter, since *LaFontaine* affects our jurisdiction, but in any event all those cases, even the ones that might be reconciled with *LaFontaine*, prove my basic point—affirmance on alternate grounds, which is forbidden to the Appellate

Division (and often to us) under *LaFontaine*, is much more common than our opinion in *LaFontaine* itself implies. (Affirmance on alternate grounds, though the majority seems to think otherwise, is exactly the same thing as affirmance "on a ground that was not decided *adversely* to the appealing party" [majority op at 197].)

Indeed, I suspect that the list I have given of alternative-ground affirmances in our court is only a partial one; it is not easy to do a Lexis or Westlaw search for such cases. For similar reasons, I am unable to say how often the Appellate Division does what we often do—simply ignore *LaFontaine*'s existence—but I am convinced it is very common. A search of Appellate Division cases in Lexis and Westlaw for the year 2010 finds not a single citation to *LaFontaine*; a search for 2009 finds one case in which it was followed (*People v Falquez*, 66 AD3d 918 [2d Dept 2009]), and one in which the court assumed, without deciding, that it was applicable (*People v Shepard*, 67 AD3d 446 [1st Dept 2009]). Here, the Appellate Division ignored *LaFontaine*, though it is squarely applicable, and I do not have to seek far for another example: Twelve days ago, in *People v Hunter* (17 NY3d 725 [2011]), we held that the Appellate Division erred in affirming a conviction on a ground that the People had failed to preserve, but there was a *LaFontaine* error in that case also. Under *LaFontaine*, the Appellate Division could not affirm on a ground not decided in the trial court, whether the issue was preserved or not. The Appellate Division in *Hunter* did not cite *LaFontaine* (*see People v Hunter*, 70 AD3d 1343 [4th Dept 2010]).

Perhaps the Appellate Division departments, like our Court, have been lucky in that counsel have frequently failed to argue a *LaFontaine* issue. If that is so, their luck and ours is quite likely to run out after the bar reads today's decision.

A little thought will suggest the reason why neither the Appellate Division nor our Court has been eager to invoke *LaFontaine*, even where we should. Its application leads to multiple absurdities. Suppose a case in which the defendant offers a document in evidence at a jury trial, and the People object on two grounds—that the document is hearsay and it is irrelevant. The judge finds the document irrelevant, and does not reach the hearsay question. The Appellate Division disagrees with the trial judge's ruling on relevance—but it is obvious at a glance that the document is inadmissible hearsay. Must the Appellate Division reverse the defendant's conviction, so that there can be a new trial at which the document is again offered and again

excluded, this time on hearsay grounds? Or is the case remanded so that the judge can rule, months or years after the trial, on the hearsay objection—a ruling to be followed by another appeal?

But I do not need to invent hypotheticals to make my point. The majority today remits the case to Supreme Court "for further proceedings in accordance with this opinion" (majority op at 201), the same relief afforded in *LaFontaine* itself (92 NY2d at 476). Neither in *LaFontaine* nor here is there any discussion of what those "further proceedings" should be. The majority here decides that defendant's convictions for weapon possession and assault may stand, but what is going to happen to his drug conviction? Are the drugs to be suppressed, even though the Appellate Division found that defendant consented to the search, and we have not suggested that the Appellate Division was wrong in this? Is it a general rule that where, as here, a trial court is led to the right result by two offsetting errors, the *wrong* result is required as a matter of law? Or is Supreme Court free to reconsider its previous ruling that defendant's consent was invalid? In doing so, may it take into account the Appellate Division's view on that subject—though the majority holds today that the expression of that view exceeded the Appellate Division's jurisdiction? And what will trial courts do on remittal in future cases, when the Appellate Division, as required by *LaFontaine* and today's decision, reverses trial court decisions that may have reached the correct result, without deciding whether the result was in fact correct?

Now that the majority has breathed new life into *LaFontaine*, I really do not know what will happen. Perhaps the Legislature will rescue the court system by amending the statutes that we have, incorrectly, interpreted to create a major problem. I hope so; but we suggested a legislative change in *LaFontaine* itself (92 NY2d at 475), without result to date. If there is a workable alternative to the approach that New York appellate courts have taken since the *LaFontaine* decision—which is, in many cases, to pretend that *LaFontaine* does not exist—I do not know what that is.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO and JONES concur with Judge READ; Judge SMITH dissents and votes to affirm in a separate opinion in which Judge PIGOTT concurs.

Order modified, etc.