Scudder, P.J.
(concurring). I agree with the majority that County Court properly refused to suppress defendant’s inculpatory statements made in the presence of counsel. I write separately, however, to clarify that, in my view, those state *1378 ments are voluntary not only because they were sufficiently attenuated from statements determined to be involuntary (see generally People v Paulman, 5 NY3d 122 [2005]; People v Bethea, 67 NY2d 364 [1986]; People v Chapple, 38 NY2d 112 [1975]), but also, independently of the attenuation, because they were made following consultation with his counsel and in the presence of his counsel.
I am mindful of People v Concepcion (17 NY3d 192 [2011]) and note that my analysis does not improperly recommend that we affirm the court’s suppression ruling on a ground rejected by the suppression court, or on a ground upon which it ruled in defendant’s favor (cf. id. at 196; see generally People v LaFontaine, 92 NY2d 470, 474 [1998]). Indeed, Concepcion and LaFontaine are “only implicated when an appellate court affirms a case on a ground that was not decided adversely to the [defendant] at the trial level” (Concepcion, 17 NY3d at 197). Here, the court explicitly addressed defendant’s opportunities to consult with counsel prior to making the statements and noted that the statements were made with the benefit of the assistance of counsel. Thus, I submit that, as part and parcel of its decision that the statement was voluntary, the court implicitly determined that the assistance of counsel rendered the statement voluntary, and thus decided that issue adversely to defendant.
Although defendant was required to endure 49 hours of interrogation, he nevertheless eventually invoked his right to counsel, whereupon the police ceased the interrogation. Defendant conferred with his assigned attorney for a period of two hours that evening and for approximately 15 minutes the following morning before again speaking to the police. With his counsel present, defendant told the police, “I killed her” and that he had placed the victim’s body in a dumpster.
More than 50 years ago, the Supreme Court reiterated that “basic rights that are enshrined in our Constitution [are] that ‘No person . . . shall be compelled in any criminal case to be a witness against himself,’ and that ‘the accused shall . . . have the Assistance of Counsel’ ” (Miranda v Arizona, 384 US 436, 442 [1966]). The Court established “procedural safeguards . . . to secure the privilege against self-incrimination” (id. at 444), in order to ensure that the right “to remain silent ... or to speak without intimidation, blatant or subtle,” (id. at 466) is not “put in jeopardy . . . through official overbearing” {id. at 442). The Miranda Court was clear: “[t]he presence of counsel . . . would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege [against self-incrimination]. His [or her] presence *1379 would insure that statements made in the government-established atmosphere are not the product of compulsion” (id. at 466). “The presence of counsel confers no undue advantage to the accused. Rather, the attorney’s presence serves to equalize the positions of the accused and sovereign, mitigating the coercive influence of the State and rendering it less overwhelming” (People v Rogers, 48 NY2d 167, 173 [1979]). Here, defendant exercised his right to counsel and thereby safeguarded his right to remain silent or to speak without intimidation (see Miranda, 384 US at 466), and thus the court properly determined that defendant’s statements were voluntary.
Bindley and Martoche, JJ., dissent and vote to reverse in accordance with the following memorandum.