[886 NE2d 156, 856 NYS2d 534]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY WHITE, Appellant.

Argued February 13, 2008; decided March 20, 2008

## POINTS OF COUNSEL

*Paul Skip Laisure*, New York City, and *Lynn W.L. Fahey* for appellant. The trial court erred in refusing to suppress appellant's post-*Miranda* confessions, which were part of a single custodial police interrogation that began before warnings were administered and continued without a pronounced break. (*People v Chapple*, 38 NY2d 112; *Missouri v Seibert*, 542 US 600; *People v Bethea*, 67 NY2d 364; *Escobedo v Illinois*, 378 US 478; *Miranda v Arizona*, 384 US 436; *Dickerson v United States*, 530 US 428; *People v Tanner*, 30 NY2d 102; *Oregon v Elstad*, 470 US 298; *Moran v Burbine*, 475 US 412; *People v Lange*, 77 AD2d 632.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Camille O'Hara Gillespie* and *Leonard Joblove* of counsel), for respondent. Defendant's claim that his post-*Miranda* admissions should have been suppressed is meritless because the police did not interrogate defendant prior to giving him *Miranda* warnings, and because, in any event, any pre-*Miranda* interrogation was brief, defendant made no incriminatory response and there was no continuous interrogation of defendant that rendered ineffective the *Miranda* warnings given to defendant after an interval of more than 15 minutes. (*Miranda v Arizona*, 384 US 436; *Oregon v Elstad*, 470 US 298; *People v Chapple*, 38 NY2d 112; *Arizona v Mauro*, 481 US 520; *Rhode Island v Innis*, 446 US 291; *People v Lynes*, 49 NY2d 286; *People v Rivers*, 56 NY2d 476; *People v Rodriquez*, 39 NY2d 976; *People v Webb*, 224 AD2d 464; *People v Boyd*, 21 AD3d 1428.)

**OPINION OF THE COURT**

CIPARICK, J.

This appeal requires us to determine whether defendant's post-*Miranda* statements made to the police after being subjected to a brief period of un-Mirandized custodial interrogation, or its functional equivalent, should have been suppressed. Under the circumstances of this case, we conclude that suppression was not required and the post-*Miranda* statements were properly received in evidence.

## Facts

The evidence at trial reveals that on June 1, 2002, at approximately 8:30 P.M., defendant Gary White shot and killed Albert Hansen on Flatbush Avenue in Brooklyn. Detectives Frank Byrne and Robert Sommer were assigned to investigate the shooting. A week later, on June 9, 2002, at approximately 2:00 A.M., Police Officer Joseph Conde, responding to an unrelated domestic violence complaint made by defendant's girlfriend, arrested defendant. At the time of defendant's arrest, he was intoxicated. Defendant's girlfriend advised Conde that defendant was involved in the Flatbush Avenue shooting. She described a construction area that corresponded to the location where Hansen had been shot twice in the head. Later that morning, Conde informed Byrne that defendant's girlfriend had implicated White in the Flatbush Avenue shooting. Byrne then brought defendant's girlfriend to the precinct to confirm the allegation.

That evening, at approximately 7:30 P.M., after spending over 17 hours in a holding cell (much of it sleeping) defendant was placed in a lineup. The only witness to the shooting was a female companion who had been walking alongside the victim when the shooting occurred, and she was unable to identify defendant from the lineup. At approximately 9:30 P.M., defendant was brought to an office for questioning by the detectives. Once there, defendant inquired why he had been placed into a lineup. In response, Sommer produced a computer generated arrest photograph of the victim. Defendant responded, "What about him?" Byrne stated "he was killed, and he was either killed in cold blood, or there was a reason for it." Defendant was then asked whether he would "like to tell his side of the story," and he responded, "I'll tell you everything. Get me Newports and a Pepsi." This initial exchange took approximately five minutes without any *Miranda* warnings.

Byrne then left the office to procure the requested items while Sommer remained with defendant, engaging in small talk. Byrne returned 15 to 20 minutes later and allowed defendant to drink his soda and smoke a cigarette. At approximately 10:00 P.M., Byrne read defendant his *Miranda* rights from a card. Defendant acknowledged that he understood his rights and signed and dated the card. Defendant also indicated his willingness to speak with the detectives.

Initially, defendant's statements as to his whereabouts on the day of the shooting were exculpatory. Defendant told the detectives that, on that date, he was in Queens visiting a friend from 7:30 P.M. until the next morning. The detectives explained to defendant that they knew his alibi was fabricated and that he should tell the truth.* In response, defendant rolled up his sleeves and showed the detectives large scars on both arms. Defendant stated that Hansen caused the injuries during a mugging, allegedly committed 16 or 17 years earlier. He further indicated that on the day of the shooting, Hansen had again robbed and threatened to kill him. When he saw Hansen walking down Flatbush Avenue with another person later that day, he ran up to them, pushed the other person aside, and shot Hansen twice.

At the detective's request, defendant provided a written statement but omitted the shooting. When confronted by the detectives regarding the omission, defendant prepared a second handwritten statement in which he admitted to shooting the victim. After defendant completed his written accounts of the shooting, he was provided with a meal, consumed it and then felt ill, but did not request medical treatment. Defendant agreed to give a videotaped confession and at approximately 1:30 A.M., on June 10, 2002, an assistant district attorney again advised defendant of his *Miranda* rights, this time on videotape. At the conclusion of the *Miranda* warnings, defendant for the first time requested counsel, at which time the videotaping ceased.

At the suppression hearing, defendant asserted that the pre-*Miranda* exchange with the police constituted an interrogation. Defendant further claimed that there was no attenuation between the initial interrogation, the subsequent administration of *Miranda* rights and the "Mirandized" statements.

---

* The People later explained at the suppression hearing that the detectives had been informed by defendant's girlfriend that he would offer the visit to his friend's home as an alibi should he be questioned regarding the Flatbush Avenue homicide.

Supreme Court initially ruled that although there was probable cause to arrest defendant based upon the domestic dispute, the detectives' actions were accusatory and, therefore, the request for defendant to tell his "side of the story" before the administration of *Miranda* warnings tainted his subsequent statements. The court further held that the 15 to 20 minute break between the pre- and post-*Miranda* actions was insufficient to purge the taint from the post-*Miranda* statements because defendant remained at all times in the presence and custody of the same detectives who made the initial accusations. The court expressed concern that the People failed to sustain their burden to prove beyond a reasonable doubt that defendant's statements were voluntary and that he had been properly provided with food and bathroom facilities during his detention before questioning commenced.

Upon the People's motion to renew and reargue, Supreme Court vacated, in part, its initial ruling, holding that defendant's pre-*Miranda* statements should remain suppressed, but the court reversed its decision as to the post-*Miranda* statements, finding them admissible. At the close of proof, the jury convicted defendant of second degree murder, and the court sentenced him to an indeterminate prison term of 22 years to life.

On appeal, defendant asserted that the court should have suppressed, as involuntary, his post-*Miranda* statements because they were the result of a continuing custodial interrogation that began before the administration of *Miranda* warnings. Defendant further asserted that suppression of the post-*Miranda* statements was warranted under *People v Chapple* (38 NY2d 112 [1975]) as the statements were given without a pronounced break. The Appellate Division affirmed the conviction, concluding that defendant had been subjected to "a brief period of custodial interrogation or its functional equivalent" (40 AD3d 662, 663 [2007]). However, because defendant made "no inculpatory statement, or any statement relating to his conduct in connection with the crime under investigation, until after warnings had been properly given and waived," the court, relying on *People v Paulman* (5 NY3d 122 [2005]), held that there was "no need to determine whether the pre- and post-*Miranda* sessions were part of a 'single continuous chain of events' " (*id*.). A Judge of this Court granted leave to appeal, and we now affirm on different grounds.

Discussion

In *Chapple*, we held that in order for *Miranda* warnings

"to be effective . . . [they] must *precede* the subjection of a defendant to questioning. Later is too late, unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning" (38 NY2d at 115).

In *Paulman*, we stated that in order

"[t]o determine whether there is a 'single continuous chain of events' under *Chapple*, New York courts have considered a number of factors, including the time differential between the *Miranda* violation and the subsequent admission; whether the same police personnel were present and involved in eliciting each statement; whether there was a change in the location or nature of the interrogation; *the circumstances surrounding the Miranda violation, such as the extent of the improper questioning*; and whether, prior to the *Miranda* violation, defendant had indicated a willingness to speak to police. No one factor is determinative and each case must be viewed on its unique facts. The purpose of the inquiry is to assess where there was a sufficiently 'definite, pronounced break in the interrogation' to dissipate the taint from the *Miranda* violation. If so, the Mirandized statement is admissible at trial despite the prior, unwarned statement" (5 NY3d at 130-131 [emphasis added and citation omitted]).

Defendant here made no statement that was either inculpatory or related to the shooting until after the *Miranda* warnings had been properly administered by Byrne and after he had properly waived his *Miranda* rights. As we held in *People v Kinnard* (62 NY2d 910, 912 [1984]), "the absence of any incriminating responses to . . . police questioning" can be one of several factors supporting a conclusion that post-*Miranda* confessions are not tainted. The absence of pre-Mirandized inculpatory statements alone cannot, however, preclude an inquiry as to whether the pre- and post-*Miranda* sessions were part of a continuous chain of events as suggested by the Appellate Division.

Applying the *Paulman* factors and examining the circumstances surrounding the *Miranda* violation, defendant's post-*Miranda* statements are admissible. In contrast to *Chapple* and

*People v Bethea* (67 NY2d 364 [1986]), where defendants were subjected to extensive un-Mirandized custodial interrogations, here the initial exchange lasted no longer than five minutes. Although the same police personnel were involved in eliciting each pre- and post-warned statement, and there was no change in the location of the interrogation, the brevity of the initial exchange is significant under *Paulman*. Although the time differential between defendant's pre-*Miranda* statement and the subsequent admission consisted of 15 to 20 minutes, on the facts of this case the break was sufficiently pronounced to dissipate the taint of the *Miranda* violation.

It was not until after defendant had smoked a cigarette and consumed the soda he had requested that Byrne began to read defendant his *Miranda* warnings. Defendant acknowledged that he understood his rights and signed the *Miranda* card prior to making any substantive statement about the case, and the record shows that defendant freely indicated his willingness to speak. Certainly, the police should have administered *Miranda* warnings initially (*see Missouri v Seibert*, 542 US 600, 617 [2004] ["the question-first tactic effectively threatens to thwart *Miranda's* purpose of reducing the risk that a coerced confession would be admitted"]). Nevertheless, we find that this record reveals that after the very brief pre-*Miranda* questioning "defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning" (*Chapple*, 38 NY2d at 115). Indeed, after receiving *Miranda* warnings, defendant first gave an exculpatory statement and provided an exculpatory alibi. Only upon being confronted with the untruthfulness of his alibi did he begin to make an inculpatory statement.

We cannot say, under the circumstances of this case, "that the defendant's 'will [was] overborne and his capacity for self-determination critically impaired,' " and therefore " 'the use of his confession [does not] offend[ ] due process' " (*People v Anderson*, 42 NY2d 35, 41 [1977], quoting *Culombe v Connecticut*, 367 US 568, 602 [1961]).

Thus we conclude, as a matter of law, that the circumstances presented here do not constitute a single continuous chain of events and that the Mirandized statements in this case were admissible and properly introduced at defendant's trial notwithstanding the prior unwarned custodial interrogation. Defendant's remaining arguments are without merit.

Accordingly, the order of the Appellate Division should be affirmed.

PIGOTT, J. (dissenting). I respectfully dissent. In my view, Supreme Court erred in refusing to suppress defendant's post-*Miranda* statements, which were part of a single custodial police interrogation that began before warnings were administered and continued without a pronounced break. Defendant was intoxicated at the time of his arrest and was interrogated following a 19 hour detention.

The New York Constitution grants broader protection than the Fifth Amendment of the United States Constitution in cases involving successive interrogations where a Mirandized statement is preceded by an improper, un-Mirandized admission (*see People v Bethea*, 67 NY2d 364, 368 [1986]). The view of the U.S. Supreme Court, as expressed in *Oregon v Elstad* (470 US 298 [1985]), is that, once *Miranda* warnings are given, the "taint" of a prior, unwarned statement is dissipated, rendering the subsequent statement admissible at trial. The Supreme Court concluded that:

> "[A] careful and thorough administration of *Miranda* warnings serves to cure the condition that rendered the unwarned statement inadmissible. The warning conveys the relevant information and thereafter the suspect's choice whether to exercise his privilege to remain silent should ordinarily be viewed as an 'act of free will' " (*id.* at 310-311).

In contrast, this Court has stated that, "where an improper, unwarned statement gives rise to a subsequent Mirandized statement as part of a 'single continuous chain of events,' there is inadequate assurance that the *Miranda* warnings were effective in protecting a defendant's rights, and the warned statement must also be suppressed" (*People v Paulman*, 5 NY3d 122, 130 [2005]). The factors to be considered in determining whether there is a "single continuous chain of events" include

> "the time differential between the *Miranda* violation and the subsequent admission; whether the same police personnel were present and involved in eliciting each statement; whether there was a change in the location or nature of the interrogation; the circumstances surrounding the *Miranda* violation, such as the extent of the improper ques-

tioning; and whether, prior to the *Miranda* violation, defendant had indicated a willingness to speak to police" (*id.* at 130-131).

While "[n]o one factor is determinative and each case must be viewed on its unique facts" (*id.* at 131), this Court has stated that the purpose of the inquiry is to assess whether "there was a sufficiently 'definite, pronounced break in the interrogation' to dissipate the taint from the *Miranda* violation" (*id.*, quoting *People v Chapple*, 38 NY2d 112, 115 [1975]).

As the majority notes, the Appellate Division's determination that defendant was subjected to a brief period of custodial interrogation or its functional equivalent prior to receiving *Miranda* warnings is a mixed question of law and fact that must be affirmed unless no record basis exists for this conclusion (*see Paulson*, 5 NY3d at 129; *People v Cruz*, 90 NY2d 961, 962 [1997]). In my view, record support exists for the Appellate Division's conclusion that defendant was interrogated because, prior to advising defendant of his *Miranda* rights the detectives asked defendant if he wanted to "tell his side of the story" after showing him a picture of the victim and telling him that he was murdered "in cold blood, or there was a reason for it." As the Appellate Division noted, such questioning was likely to elicit an incriminating response from defendant.

Furthermore, the fact that defendant's pre-*Miranda* statement was not incriminating does not eliminate the need to determine whether the sessions were part of a "single continuous chain of events." Adopting such a principle would significantly alter this Court's *Chapple-Bethea* rule by rendering it inapplicable in all cases except where the defendant confesses or implicates himself in a crime prior to receiving *Miranda* warnings. If the pre- and post-*Miranda* interrogations are part of a "single continuous chain of events," there still exists "inadequate assurance that the *Miranda* warnings were effective in protecting a defendant's rights" (*Paulman*, 5 NY3d at 130), even if defendant does not make an incriminating statement prior to receiving *Miranda* warnings. Concluding that only inculpatory statements trigger the "single continuous chain of events" rule would not, in my opinion, adequately deter prolonged, un-Mirandized police interrogation.

Applying the *Paulman* factors to determine whether the questioning of defendant was part of a "single continuous chain of events," it seems clear that there was no pronounced break between the pre-*Miranda* statement by defendant (in which he

agreed to tell the detectives "everything" if they brought him cigarettes and Pepsi) and his post-*Miranda* confession. The same detectives performed the interrogation before and after administration of the *Miranda* warnings (in fact, one detective remained with defendant while the cigarettes and soft drink were being retrieved) and there was no change in the location or nature of the interrogation (*see Paulman*, 5 NY3d at 130-131). Further, unlike the case in *Paulman*, where the Court noted that the defendant had previously expressed a willingness to speak with the police prior to the *Miranda* violation, there is no indication here that defendant wished to speak with the police before the *Miranda* violation occurred. Accordingly, in my view, defendant's post-*Miranda* statements should have been suppressed.

Chief Judge KAYE and Judges GRAFFEO, READ, SMITH and JONES concur with Judge CIPARICK; Judge PIGOTT dissents in a separate opinion.

Order affirmed.