■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD CAVANAGH, Appellant. [948 NYS2d 738]—

Mercure, J.P.

Several firearms and two electric guitars were stolen from a home in the Town of Woodstock, Ulster County, and that information was relayed to area law enforcement agencies. Subsequently, a bouncer at a bar in the City of Kingston, Ulster County reported to police that he had been approached by an "older white male, tall, skinny with white hair and white beard" and two women, who were traveling in a gray minivan with wood grain siding and had attempted to sell him a shotgun. Kingston police were advised of these two incidents prior to the start of their next shift, with the sergeant advising officers to use caution if they spotted the vehicle described by the bouncer. Shortly thereafter, patrol officers observed defendant, who matched the description provided by the bouncer, and stopped his minivan approximately one mile from the bar. Defendant appeared unusually nervous during the initial stop and, after being asked whether there was anything "illegal" in his vehicle, he admitted that rifles and other stolen items were inside and permitted the officers to open the vehicle's hatch. Defendant admitted that the items were stolen from a residence in Woodstock, and he was transported to the police station, where

*Miranda* warnings were administered. He then made further inculpatory statements, and consented to a search of the vehicle that resulted in the recovery of stolen goods.

Defendant was subsequently charged in an indictment with burglary in the second degree. Following a hearing, County Court denied his motion to suppress his statements to police and the stolen items. He then pleaded guilty as charged, was sentenced to a prison term of 10 years to be followed by five years of postrelease supervision, and was additionally ordered to pay restitution. Defendant appeals, and we affirm.

Initially, we reject defendant's argument that police lacked reasonable suspicion to stop his vehicle. The patrol officers who executed the stop were acting on the basis of reports from fellow law enforcement officials and were entitled to assume the reliability of those communications (*see People v Dodt*, 61 NY2d 408, 416 [1984]; *People v Lypka*, 36 NY2d 210, 213 [1975]; *People v Ynoa*, 223 AD2d 975, 977 [1996], *lv denied* 87 NY2d 1024, 1027 [1996]). Moreover, defendant and the minivan substantially matched the descriptions provided by the bouncer regarding an attempted firearm sale that occurred nearby, and that information provided the reasonable suspicion required to stop the vehicle (*see People v Hicks*, 68 NY2d 234, 238 [1986]; *People v McFadden*, 244 AD2d 887, 888 [1997], *lv denied* 97 NY2d 757 [2002]; *see also People v Maye*, 206 AD2d 755, 757 [1994], *lv denied* 84 NY2d 1035 [1995]).

Thereafter, the officers were authorized to direct defendant to exit the vehicle and to pat him down for weapons (*see People v Mundo*, 99 NY2d 55, 58 [2002]; *People v Schwing*, 14 AD3d 867, 868 [2005]). Further, given the existence of reasonable suspicion, the officers necessarily possessed the lesser founded suspicion of criminality, giving them the common-law right to inquire whether defendant had anything illegal in the vehicle (*see People v Rodriguez*, 81 AD3d 404, 405 [2011], *lv denied* 16 NY3d 862 [2011]; *People v Walker*, 55 AD3d 343, 343 [2008], *lv denied* 11 NY3d 931 [2009]; *cf. People v Garcia*, 85 AD3d 28, 32 [2011], *lv granted* 18 NY3d 883 [2012]).* Defendant admitted that there were rifles in the vehicle and, as he conceded before County Court, that response gave the officers probable cause to detain him and search his vehicle (*see People v Orlando*, 56 NY2d 441, 445-446 [1982]).

---

* Despite that inquiry, the record fully supports County Court's determination that defendant was not in custody at that point so as to require the administration of *Miranda* warnings (*see Berkemer v McCarty*, 468 US 420, 439-440 [1984]; *People v Bennett*, 70 NY2d 891, 893-894 [1987]; *see also People v Moore*, 6 NY3d 496, 500 [2006]).

Even assuming that defendant had been subjected to improper custodial interrogation during the stop, suppression of his subsequent Mirandized statements was not warranted inasmuch as the initial stop and later interrogation at the police station did not form a single and continuous chain of events (*see People v Paulman*, 5 NY3d 122, 130 [2005]). Whether there has been a definite, pronounced break in interrogation "depends upon a number of factors, including: (1) the time elapsed between the *Miranda* violation and later statement, (2) whether the same police officers were involved in obtaining each statement, (3) whether a change in the location or nature of the questioning occurred, (4) the circumstances surrounding the violation itself and (5) whether defendant had indicated a willingness to speak to police prior to the *Miranda* violation" (*People v Howard*, 72 AD3d 1199, 1201 [2010], *lv denied* 15 NY3d 806 [2010]; *see People v Paulman*, 5 NY3d at 130-131). Defendant remained willing to speak throughout his encounter with police, his Mirandized statements were taken by different personnel and in a different location from the initial stop, and he made those statements over an hour after the stop occurred. Given these facts, County Court properly determined that the taint from any purported violation would have dissipated (*see People v Henderson*, 74 AD3d 1567, 1570 [2010], *mod* 77 AD3d 1168 [2010]; *People v Neal*, 60 AD3d 1158, 1159-1160 [2009], *lv denied* 12 NY3d 857 [2009]).

Rose, Lahtinen, Stein and McCarthy, JJ., concur. Ordered that the judgment is affirmed.