■ The People of the State of New York, Respondent, v Sparkle Daniel, Appellant. [996 NYS2d 16]—

Judgment, Supreme Court, Bronx County (John W. Carter, J., at hearing and trial), rendered October 25, 2010, convicting defendant, after a jury trial, of murder in the second degree, and sentencing her to a term of 25 years to life, reversed, on the law, defendant's motion to suppress statements granted, and the matter remanded for a new trial.

In June 2007, an informant identified defendant to police as one of two perpetrators of the unsolved 2003 murder of a 91-year-old woman at her home in the Bronx. On July 19, 2007, officers of the Bronx Homicide Task Force located defendant on the street in front of her residence, took her into custody, handcuffed her, and transported her to the Task Force office. After a 15-minute wait in a holding cell, defendant was brought to an interview room, uncuffed, at about 6:55 p.m. A detective asked her "if she knew why she was here," and she replied, "No." The detective then told her that the police were investigating the death of an elderly woman; defendant did not respond. At that point, the detective was called away from the interview for several minutes. When he returned to the interview room, he asserted that he knew that defendant knew what he was talking about, to which defendant responded, "Yes." Defendant then proceeded to say that she and another woman (subsequently charged as the other perpetrator) had seen the victim outside her home and had asked to use her phone. At that point, the detective stopped defendant and administered *Miranda* warnings to her for the first time. Defendant acknowledged the warnings in writing.

When the detective finished giving the warnings, at about 7:10 p.m., defendant resumed her story, in which she claimed that, after the elderly woman admitted her and her companion into the house to use the phone, her companion committed a theft and then murdered the woman, without defendant's assistance, to avoid arrest. The detective wrote down the statement, and defendant initialed the writing after reviewing it. The statement was completed at about 7:57 p.m. Thereafter, the detective told defendant he did not believe that she had told the whole story. Defendant then gave a second statement from 8:05 p.m. to 8:27 p.m., which the detective also wrote down and defendant initialed. In the second written statement, defendant admitted to having given her companion assistance in committing the murder, but claimed that she had done so under threat from her companion, who allegedly wielded a knife.

Upon the completion of the second written statement at 8:27 p.m., defendant was given a break of approximately 2 hours and 45 minutes. During the break, defendant consumed a meal of takeout Chinese food and a soda. At about 11:15 p.m., defendant gave a videotaped statement to an assistant district attorney, in the detective's presence. At the beginning of the videotaped statement, the assistant district attorney administered fresh *Miranda* warnings to defendant. The substance of the videotaped statement was generally consistent with the second written statement.

Based on her own statements, the informant's testimony, and other evidence (including fingerprints on the victim's phone), defendant was indicted for the murder of the elderly woman. Defendant moved to suppress her two written statements and her videotaped statement on the ground that she had not been given *Miranda* warnings until after the custodial interrogation had begun. The hearing court denied the motion, finding that the initial *Miranda* warnings given at 7:10 p.m. had been sufficient. After a jury trial, defendant was convicted and sentenced as indicated.[1] Upon defendant's appeal, Court of Appeals precedent leaves this Court with no alternative but to reverse, grant the motion to suppress the statements, and remand for a new trial.

"[W]here an improper, unwarned statement gives rise to a subsequent Mirandized statement as part of a single continuous chain of events, there is inadequate assurance that the *Miranda* warnings were effective in protecting a defendant's rights, and the warned statement must also be suppressed" (*People v Paulman*, 5 NY3d 122, 130 [2005] [internal quotation marks omitted]). On this record, applying the factors identified in *Paulman* as pertinent to this inquiry (*id.* at 130-131), it is clear that defendant's two written statements, although produced after she had been Mirandized, were "part of a single continuous chain of events" that included the detective's initial pre-warning inquiries and statement, defendant's pre-warning acknowledgment that she knew why she had been brought in, and her pre-warning statement that she and the other alleged perpetrator had asked to use the victim's phone outside the latter's house.[2] There was no time differential between the *Miranda* violation and the Mirandized interview that immediately followed, giving rise to the two written statements; the same police personnel were involved before and after the warnings; there was no change in the location or nature of the interrogation; and de-

---

**1.** Defendant's accomplice, who was interrogated and tried separately, was also convicted of second-degree murder, and her conviction has been affirmed (*see People v Panton*, 114 AD3d 450 [1st Dept 2014], *lv denied* 23 NY3d 966 [2014]).

**2.** We reject the People's contention that the exchange between the detective and defendant before she was Mirandized was not a custodial interrogation. Defendant, who had been brought to the Task Force office involuntarily and in handcuffs, was plainly in custody, and the detective's statements to her were plainly intended to elicit incriminating statements, as he admitted at the hearing (*see People v Ferro*, 63 NY2d 316, 322 [1984], *cert denied* 472 US 1007 [1985] [" 'the term "interrogation" under *Miranda* refers . . . to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response' "], quoting *Rhode Island v Innis*, 446 US 291, 301 [1980]).

fendant had never indicated a willingness to speak to the police before the *Miranda* violation. Further, although the pre-warning exchange was very brief and did not include any admission by defendant of criminal conduct, her unwarned statements plainly tended to incriminate her by acknowledging that she knew something about the murder of an elderly woman and by placing herself at the scene of the crime with the victim and the other alleged perpetrator (*see People v White*, 10 NY3d 286, 291 [2008], *cert denied* 555 US 897 [2008] [whether the defendant made any pre-Mirandized inculpatory statement is one of several factors to be considered in determining whether a post-*Miranda* statement was tainted by an earlier *Miranda* violation]).[3]

Under the foregoing circumstances established by the record, it cannot be said that there was, between the *Miranda* violation and the making of the subsequent Mirandized written statements, such a "definite, pronounced break in the interrogation to dissipate the taint from the *Miranda* violation" (*Paulman*, 5 NY3d at 131 [internal quotation marks omitted]) by "return-[ing] [defendant], in effect, to the status of one who is not under the influence of questioning" (*People v Chapple*, 38 NY2d 112, 115 [1975]). We note that we are precluded from considering whether the break of at least 2 hours and 45 minutes between the completion of defendant's second written statement and the commencement of her videotaped statement (which began with renewed *Miranda* warnings administered by the assistant district attorney) sufficed to attenuate any taint from the commencement of the questioning before she was initially Mirandized and, therefore, to render the videotaped statement admissible. The hearing court's decision denying suppression did not consider any such theory, which had not been raised by the People in opposition to the motion seeking suppression of all three recorded statements. Accordingly, under CPL 470.15 (1), we are without power to affirm on the ground that the videotaped statement was admissible and that its admission rendered harmless the error in admitting the written state-

---

**3.** The hearing court's determination that any taint was dissipated by the interval between the detective's leaving the room and his returning approximately 15 minutes later was based on an inaccurate characterization of the record. The detective's testimony made clear that, after an absence of a "couple of minutes," he returned to the room and, without reading defendant her *Miranda* rights, told her that he knew that she knew what he was talking about. At that point, defendant made her brief pre-warning statement. This was followed by the detective stopping defendant and administering *Miranda* warnings, which in turn was followed by defendant's first post-warning statement.

ments (*see People v Concepcion*, 17 NY3d 192 [2011]; *People v LaFontaine*, 92 NY2d 470 [1998]).

In sum, we are compelled to grant defendant's suppression motion as to all of her statements to the police and to order a new trial. There is no basis upon which to find that the admission of the statements was harmless, and the People have made no argument to that effect. Finally, since we are ordering a new trial, we find it unnecessary to discuss defendant's other arguments, except to note that we find that the verdict was not against the weight of the evidence. Concur—Tom, J.P., Friedman, Manzanet-Daniels and Gische, JJ.

Clark, J., dissents in a memorandum as follows: While I agree that defendant was in custody and that the pre-*Miranda* questioning of defendant constituted interrogation, I depart from the majority in finding that the extent of the pre-*Miranda* questioning and the nature of the information obtained were sufficient to dissipate the taint of the un-Mirandized custodial interrogation. I would therefore affirm the court's decision and deny suppression of the post-*Miranda* statements.

Defendant was arrested on July 19, 2007, and charged in connection with the January 9, 2003 robbery and murder of 91-year-old Nellie Hocutt. Hocutt was found in her home, asphyxiated, bound to a chair, with a plastic bag tied around her head; she had apparently been forced to ingest wine shortly before her death.

The court conducted a *Mapp/Dunaway/Huntley* hearing, with regard to both defendant and Nadine Panton in September 2010. Defendant sought suppression of three statements she made to police and prosecutors on the night of her arrest. The court denied the motion to suppress the three statements.

The Court of Appeals has set forth a list of factors to be considered in determining whether there is a sufficiently definite, pronounced break in the interrogation to dissipate the taint of un-Mirandized custodial interrogation (*see People v Paulman*, 5 NY3d 122 [2005]). Those factors include "the time differential between the *Miranda* violation and the subsequent admission; whether the same police personnel were present and involved in eliciting each statement; whether there was a change in the location or nature of the interrogation; the circumstances surrounding the *Miranda* violation, such as the extent of the improper questioning; and whether, prior to the *Miranda* violation, defendant had indicated a willingness to speak to police" (*id.* at 130-131]).

The majority correctly concludes that the same police personnel were involved before and after the warnings; there was no

change in the location of the interrogation; and defendant did not indicate a willingness to speak with the police before the *Miranda* violation. Notwithstanding, I disagree with the majority's determination that defendant's statements tended to incriminate her.

Our determination of this appeal requires an examination of both the extent of the un-Mirandized questioning and the nature of the information obtained as a result. As explained in *Paulman*, the court's denial of the suppression motion must be based on "the circumstances surrounding the *Miranda* violation, such as the extent of the improper questioning" (5 NY3d at 130). The majority agrees that the extent of the improper questioning was very brief. Essentially, there were two statements made to defendant that were designed to elicit a response. One question at 6:55 p.m. was: "[D]o you know what you are here for?" The detective was interrupted, exited the room, and returned a few minutes later to ask: "[D]o you know what I am talking about now?" Thereafter, defendant stated to the detective that "her and Nadine went to her aunt's house. She saw Ms. Nellie . . . and asked her if she could use her phone." The detective immediately stopped defendant and administered the *Miranda* warnings. Until this point, defendant had not confessed or admitted to any wrongdoing.

It was not an incriminating response for defendant to imply that (1) she knew the victim; (2) she was with Nadine Panton; or (3) that she asked to used the victim's phone. The record further demonstrates that defendant's response was not incriminating since the defense case chiefly consisted of evidence that she had a good relationship with the victim and that she frequently visited the victim and often used her phone. In *People v White*, the Court of Appeals explained that " 'the absence of any incriminating responses to . . . police questioning' can be one of several factors supporting a conclusion that post-*Miranda* confessions are not tainted" (10 NY3d at 291, quoting *People v Kinnard*, 62 NY2d 910, 912 [1984]). Thus, considering the brevity of the pre-*Miranda* questioning and the inconsequential information obtained by the police, I find that the taint of the pre-*Miranda* statement was sufficiently dissipated.

Further, while the majority indicates that there was no break between the *Miranda* violation and the Mirandized interview, it is important to note that the record is unclear in this regard since the evidence does not present the pace at which they spoke or a precise amount of time between the *Miranda* violation and defendant's post-*Miranda* statement given at 7:10 p.m. I do not agree that this gap in the record establishes the immediacy that

the majority finds. Having given consideration to the factors detailed above, I find that suppression was not required, and the post-*Miranda* statements were properly received in evidence.