Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered: July 28, 2016                    106323
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

MICHAEL L. HARRIS,
                        Appellant.
_____

Calendar Date: May 26, 2016

Before: Lahtinen, J.P., Rose, Lynch, Clark and Aarons, JJ.

_____

        David M. Kaplan, Penfield, for appellant.

        Weeden A. Wetmore, District Attorney, Elmira (Sophie J.
Marmor of counsel), for respondent.

_____

Rose, J.

        Appeal from a judgment of the County Court of Chemung
County (Keene, J.), rendered October 21, 2013, convicting
defendant upon his plea of guilty of the crime of criminal
possession of a controlled substance in the third degree.

        When police officers responded to a call regarding a
disturbance at an apartment, they arrived at the door and heard
the sounds of a physical altercation inside. The officers opened
the unlocked door, entered the apartment and broke up a fight
between two male residents. The perceived aggressor was
restrained, handcuffed and placed in a sitting position on the
floor in the hallway next to the living room while the apparent
victim was asked to sit on the couch while both were questioned.
Defendant emerged from the bathroom and also sat on the couch at

the request of the officers, who continued their questioning regarding the incident. The officers then heard the sounds of another person and, when asked, defendant indicated that his wife was in the back bedroom, which the victim said was rented to defendant. While the other officers remained in the living room, one of the officers conducted a sweep of the apartment. After looking in the bedrooms that opened directly into the living room, the officer proceeded into the kitchen where he knocked on defendant's locked bedroom door and directed defendant's wife to "open the door." After indicating that she had to get dressed, she emerged and complied with the officer's request to go into the living room to join her husband and the victim on the couch. At that point, the officer smelled a chemical odor that he did not recognize emanating from the bedroom. He then entered the bedroom and saw bottles of rubbing alcohol and a gallon jug of distilled water. Seeing a shirt covering something up on the floor, he lifted it up and observed a pot of liquid on a hotplate that he believed to be used to make methamphetamine (hereinafter the meth lab). Only then was everyone present frisked for weapons. Investigators were called and, while still inside the apartment, defendant was questioned by investigators who elicited incriminating admissions. He was then removed from the apartment and taken to a police station where he signed a written statement. Based upon the officer's observations inside the back bedroom, a search warrant was issued and executed, and a quantity of methamphetamine together with the equipment and materials used to produce it were seized.

Defendant was indicted on charges of criminal possession of a controlled substance in the second degree, unlawful manufacture of methamphetamine in the third degree and criminal possession of a controlled substance in the seventh degree. Following a suppression hearing, County Court (Hayden, J.) denied defendant's motion to suppress both the physical evidence and his statements to police. Defendant thereafter accepted a plea agreement pursuant to which he pleaded guilty under the top count of the indictment to the lesser included offense of criminal possession of a controlled substance in the third degree, and he was sentenced, as a second felony offender, to the agreed-upon prison term of 3½ years with three years of postrelease supervision.

On appeal, defendant contends that County Court erred in denying his motion to suppress the physical evidence and his statements to police.  Specifically, with regard to the evidence recovered from his bedroom, defendant argues that the entry into and search of his bedroom were illegal and, thus, the police were not lawfully in his bedroom when they made the observations that formed the basis for the search warrant application, requiring that the evidence be suppressed.  We agree.

While warrantless searches of a home are presumptively unreasonable under the Fourth Amendment (see US Const 4th Amend; Kentucky v King, 563 US 452, 459 [2011]), defendant does not dispute that exigent circumstances justified the officers' initial entry into the apartment without a warrant, as they had reasonable grounds to believe that there was an altercation occurring and, thus, an immediate need to render assistance inside the apartment (see People v Musto, 106 AD3d 1380, 1381 [2013], lv denied 21 NY3d 1007 [2013]; see also Brigham City v Stuart, 547 US 398, 403-404 [2006]; United States v Simmons, 661 F3d 151, 157 [2d Cir 2011]).  Rather, the question is whether, on these facts, the officers were entitled to enter and look under clothing in defendant's bedroom as part of a protective sweep, which "is a quick and limited search of premises . . . conducted to protect the safety of police officers or others.  It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding" (Maryland v Buie, 494 US 325, 327 [1990]; see United States v Hassock, 631 F3d 79, 86-88 [2d Cir 2011] [collecting cases]; see also People v White, 259 AD2d 400, 401 [1999], lv denied 93 NY2d 1029 [1999]).  Recognizing the dangers faced by police officers who enter homes, the Supreme Court of the United States has held that officers may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched" (Maryland v Buie, 494 US at 334).  Beyond that precautionary measure, the Court held that, to conduct a further protective sweep, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene" (id. at 334).

Here, the suppression testimony established that the officers responded to a general disturbance call at 7:30 a.m. and immediately stopped a fist fight between two male roommates. The officers subdued and cuffed the aggressor and placed the victim on the couch, bringing the situation under their control. While the two continued to argue, they made no further aggressive moves. No guns or weapons were observed, no blood or serious injuries were noted and no one was seen or heard fleeing when police entered the apartment. When asked at the outset, the victim asserted only that the aggressor had hit him and should be arrested. When defendant exited the adjacent bathroom, he did not run out of the apartment or to his bedroom but, rather, he was compliant, provided his name and did as requested. When asked, defendant disclosed that his wife was in his bedroom. No one present reported that others had been involved in the altercation and no facts were alleged by the officers to support a belief that a third person had been involved or was hiding in the apartment and posed a danger to those present. Significantly, no one was patted down for weapons until after the search of defendant's bedroom.

Although the officers were informed that defendant's wife was in the back bedroom, there was no basis upon which to believe that she had been involved in or was a witness to the altercation, that she posed a threat to them or that there were weapons in that or any other room (compare People v Kims, 24 NY3d 422, 427, 439-440 [2014]; People v Gibson, 117 AD3d 1317, 1319-1320 [2014], affd 24 NY3d 1125 [2015]; People v Musto, 106 AD3d at 1382; People v Lasso-Reina, 305 AD2d 121, 122 [2003], lv denied 100 NY2d 595 [2003]). The officers never testified that they asked those present any questions to ascertain if there were other witnesses or participants. While police officers are understandably concerned about the presence of any person in a home where they are involved in an ongoing investigation of a crime, they are not entitled to expand the scope of a protective sweep — which is a limited, "cursory inspection" of "immediately adjoining" areas — unless they have "articulable facts" upon which to believe that there is a person present who may pose a danger to those on the scene (Maryland v Buie, 494 US at 334-335).

The concurrence notes that, in gauging the safety of the situation, the officer who conducted the protective sweep was not limited to information provided by the occupants of the apartment, but could make his own assessment based on the totality of the circumstances. While we agree with this as a general statement, we cannot agree with the suggestion that the officer's observation of a glass pipe and suspected narcotics in the aggressor's bedroom provided articulable facts that warranted the belief that an individual in the back bedroom posed a danger to those in the living room. In our view, the facts known to the officer – prior to the entry and search of defendant's bedroom – do not support a belief that there was any such threat. Rather, the altercation had been subdued and the situation was no longer volatile. In short, the record lacks the requisite articulable facts that would lead a reasonably prudent officer to believe that, once defendant's wife had exited the bedroom and prior to the officer's entry into it, there was anything within that posed a danger to the others at the scene so as to justify a protective sweep of that room (see id. at 334; People v Harper, 100 AD3d 772, 773-774 [2012], lv denied 21 NY3d 943 [2013]; compare People v Bryant, 91 AD3d 558, 558 [2012], lv denied 20 NY3d 1009 [2013]; People v McAllister, 35 AD3d 300, 300 [2006], lv denied 8 NY3d 925 [2007]; People v Garcia, 27 AD3d 307, 307 [2006], lv denied 6 NY3d 894 [2006]; People v White, 259 AD2d at 400-401 [1999]; People v Rivera, 257 AD2d 425, 426 [1999], lv denied 93 NY2d 901 [1999]).

Accordingly, we must agree with defendant that his motion to suppress the physical evidence found in his bedroom should have been granted and that this evidence should not have formed the basis for the issuance of a search warrant. Because defendant did not waive his right to appeal and the erroneous denial of his suppression motion may have influenced his decision to enter a guilty plea, to which harmless error analysis does not apply, he is entitled to have his plea vacated and to be restored to his prepleading status (see People v Coles, 62 NY2d 908, 910 [1984]; People v King, 137 AD3d 1424, 1425 [2016], lv denied 27 NY3d 1070 [2016]; People v Hope, 284 AD2d 560, 562 [2001]; People v Samuels, 270 AD2d 779, 781 [2000]; see also CPL 470.55 [2]).

Since we are vacating defendant's guilty plea and remitting

for further proceedings, we address defendant's contention that County Court also erred in denying his motion to suppress his statements to police. Beginning with defendant's oral statements to police in the apartment, the suppression testimony established that, after the officer exited defendant's bedroom and reported the discovery of the meth lab, police investigators were called and the occupants were patted for weapons. One of the investigators, who had been advised of the drug-related discovery, questioned defendant in the living room about the meth lab, eliciting incriminating admissions from him. No Miranda warnings were provided. The questioning was not merely investigatory but, rather, an interrogation designed and likely to elicit an incriminating response (see People v Paulman, 5 NY3d 122, 129 [2005]). While defendant was not handcuffed or restrained and the questioning lasted only a few minutes, given the discovery of a meth lab in his bedroom and the police-dominated atmosphere, we cannot conclude that "a reasonable person in defendant's position would have believed that he or she was free to leave" and, therefore, we find that the questioning was custodial and Miranda warnings were required (People v Cade, 110 AD3d 1238, 1239 [2013], lv denied 22 NY3d 1155 [2014]; see People v Paulman, 5 NY3d at 129). Thus, defendant's oral statements should have been suppressed.

Following those improper unwarned statements, defendant was taken into custody and transported to the police station where he signed a Mirandized written statement. To determine whether those late Miranda warnings were effective in protecting defendant's rights or whether the subsequent written statement was part of a "single continuous chain of events" requiring its suppression, courts look to numerous factors, "including the time differential between the Miranda violation and the subsequent admission; whether the same police personnel were present and involved in eliciting each statement; whether there was a change in the location or nature of the interrogation; the circumstances surrounding the Miranda violation, such as the extent of the improper questioning; and whether, prior to the Miranda violation, [the] defendant had indicated a willingness to speak to police" (People v Paulman, 5 NY3d at 130-131 [internal quotation marks omitted]; accord People v White, 10 NY3d 286, 291 [2008], cert denied 555 US 897 [2008]; People v Cavanagh, 97 AD3d

980, 982 [2012], lv denied 19 NY3d 1101 [2012]).  "No one factor is determinative and each case must be viewed on its unique facts" (People v Paulman, 5 NY3d at 131).

The testimony addressing the foregoing factors was cursory. The second investigator to question defendant testified that he provided Miranda warnings to defendant in an interview room at the police station approximately three hours after police had responded to the apartment.  There was a change in the location of the interrogation and the police personnel involved, defendant was not placed in restraints and he had indicated some willingness to speak with officers at the apartment prior to the Miranda violation.  However, the record is devoid of testimony regarding the circumstances under which defendant was transported to the police station, whether any questioning occurred during his transport, or the nature, atmosphere or duration of the questioning at the station.  Given that defendant heavily incriminated himself when questioned by the first investigator at the apartment in violation of his Miranda rights, we do not find that the People established at the hearing that there was a "pronounced break in [the] interrogation adequate to justify a finding that the defendant was no longer under the sway of the prior [unwarned] questioning when the warnings were [subsequently] given" (People v Guilford, 21 NY3d 205, 209 [2013] [internal quotation marks and citation omitted]).  As the People failed to establish that defendant's post-Miranda statements were attenuated from his earlier improper custodial, inculpatory statements elicited in violation of Miranda, defendant was likewise entitled to suppression of his written statement (see People v White, 10 NY3d at 291).  Defendant's remaining claims either lack merit or are rendered academic by our determination.

Lahtinen, J.P., and Aarons, J., concur.


Lynch, J. (concurring).

We respectfully disagree only with respect to the majority's determination to suppress all the physical evidence

found in the bedroom.  From our perspective, there were articulable facts that would warrant a reasonably prudent officer in believing that defendant's bedroom might harbor a dangerous individual or a victim of the altercation.  The majority has accurately described the underlying event, but there are a few additional factors of moment.  There is no plausible dispute that, for safety reasons, the officer was entitled to search the bedrooms that opened directly into the living room (see Maryland v Buie, 494 US 325, 336 [1990]).  The officer explained, "[W]e've been ambushed before. . . . And for our own safety and for everyone else in the house, when we walk into a hostile situation like that, our job is to make the scene safe."  Notably, the officer observed "a broken lamp and signs of a disturbance" in the apparent victim's bedroom and "a glass pipe, and . . . a small plastic container with some white chunky substance" in the apparent aggressor's bedroom that the officer "suspected . . . was narcotics."  At this juncture, the officer heard someone elsewhere in the apartment and, upon inquiry, was informed that defendant's wife was in the back bedroom off the kitchen — a distance of only 10 feet from the living room.  The officer explained that he was uncertain what the status of defendant's wife was — whether she was a threat or even if she was safe.  When he knocked on her locked bedroom door, he "heard scuffling" and "movement."  The officer directed defendant's wife to open the door.  She responded, "Just a minute," and literally took that long to open the door.  The officer testified that, when she did so, he "was hit with a chemical smell, [which] almost burned [his] nose hairs a little bit."  He explained that he then went into the bedroom "to make sure there was no one else hiding in there."

In our view, the situation at hand, which had spilled into several rooms, was volatile and aptly described by the officer as "hostile."  This context, coupled with the evidence of illegal drugs and the proximity of the back bedroom, provided a reasonable basis for the officer to extend the protective sweep to that bedroom (see People v Gibson, 117 AD3d 1317, 1319-1320 [2014], affd 24 NY3d 1125 [2015]; People v Bryant, 91 AD3d 558, 558 [2012], lv denied 20 NY3d 1009 [2013]; People v Garrido, 34 AD3d 368, 369 [2006], lv denied 8 NY3d 880 [2007]; People v Lasso-Reina, 305 AD2d 121, 122 [2003], lv denied 100 NY2d 595

[2003]; People v Martinez, 187 AD2d 992, 992 [1992], lv denied 81 NY2d 888 [1993]).  This is all the more so given the wife's dilatory actions in exiting the bedroom and the strong chemical odor that emanated from that room.  Confronted with these circumstances, the officer had a reasonable basis to check the back bedroom to allay his safety concerns, even after the wife had left the room.  In gauging the safety of the situation, the officer was not limited to the information provided by the occupants of the apartment, but could make his own assessment based on the totality of the circumstances.  This case is comparable to the situation in Maryland v Buie (supra), for when that defendant emerged from the basement of the house being searched pursuant to an arrest warrant and was placed under arrest, a detective went into the basement "in case there was someone else" (id. at 328 [internal quotation marks omitted]).

While the protective sweep of the bedroom was justified, as the majority explained, such a sweep is "narrowly confined to a cursory visual inspection of those places in which a person might be hiding" (id. at 327; see People v McAllister, 35 AD3d 300, 300 [2006], lv denied 8 NY3d 925 [2007]).  Only items that are found in plain view during a proper protective sweep can be seized or used as the basis of a search warrant (see People v Boyland, 79 AD3d 1658, 1658-1659 [2010], affd 20 NY3d 879 [2012]; People v Martinez, 187 AD2d at 992).  Although the officer properly discovered several items in plain view, including bottles of rubbing alcohol, a jug of distilled water and a gallon jar with white residue on the inside, his search exceeded its constitutional limits when he lifted a shirt to discover a hotplate and a cooking pot with liquid in it (see People v Knapp, 52 NY2d 689, 697 [1981]; People v James, 27 AD3d 1089, 1090-1091 [2006], lv denied 6 NY3d 895 [2006]; People v Johnson, 241 AD2d 527, 527-528 [1997], lv denied 90 NY2d 1012 [1997]; People v White, 188 AD2d 423, 423-424 [1992], lvs denied 81 NY2d 886, 894 [1993]; see also People v Goodwin, 286 AD2d 935, 935 [2001], lv denied 97 NY2d 682 [2001]).  Therefore, County Court should not have considered evidence of the hotplate and cooking pot in resolving defendant's suppression motion.  That said, whether the remaining evidence provided an adequate basis for the issuance of a search warrant should be addressed, in the first instance, by the trial court (see People v Ingram, 18 NY3d

948, 949 [2012]; <u>People v Sykes</u>, 110 AD3d 1437, 1438 [2013]).  We otherwise concur with the majority's decision.

Clark, J., concurs.

ORDERED that the judgment is reversed, on the law, grant defendant's motion to suppress the physical evidence found in the bedroom, the oral statements defendant made to police at the apartment and defendant's written statement, and matter remitted to the County Court of Chemung County for further proceedings not inconsistent with this Court's decision.

ENTER:

Robert D. Mayberger
Clerk of the Court