People v Williams (2023 NY Slip Op 03565)

People v Williams

2023 NY Slip Op 03565

Decided on June 30, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 30, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, MONTOUR, AND OGDEN, JJ.

51 KA 18-02032

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
TERRY L. WILLIAMS, DEFENDANT-APPELLANT. 

ERIK TEIFKE, ACTING PUBLIC DEFENDER, ROCHESTER (BRIAN SHIFFRIN OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Monroe County Court (Vincent M. Dinolfo, J.), rendered July 19, 2018. The judgment convicted defendant upon a jury verdict of murder in the second degree and criminal possession of stolen property in the fourth degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him following a jury trial of murder in the second degree (Penal Law
§ 125.25 [1]) and criminal possession of stolen property in the fourth degree (§ 165.45 [2]). The victim was defendant's former girlfriend with whom he had lived until shortly before her decomposed body was found in her apartment. The victim's hands and legs had been tied behind her back, and a shirt covering the victim's face had been attached to her ankles such that it would tighten around her mouth the more she struggled to get free. A washcloth had been stuffed in her mouth. The cause of death was determined to be positional asphyxiation and/or suffocation.
When questioned by two investigators at the police station, defendant initially denied having anything to do with the victim's death, stating that he had recently moved out of her apartment and that she was alive when he last saw her. Upon further questioning, however, defendant eventually made incriminating statements, admitting that he tied the victim's hands and feet behind her back and put something in her mouth before leaving her alone in the apartment. Defendant explained that he restrained the victim because she was threatening to hurt herself and he wanted to protect her. He said that he thought that she could breathe through her nose when he left her bound and gagged in the apartment.
Following indictment, defendant filed an omnibus motion in which he sought suppression of the statements that he made to the investigators. After a Huntley hearing, at which a video recording of the police interview was admitted in evidence, defendant submitted a letter memorandum in which he contended that his statements were involuntarily made because, at the outset of the interview, the investigators misled him into thinking that they wanted to talk to him about a larceny, which defendant "was told . . . 'was no big deal.' " Defendant further contended in the letter memorandum that the investigators' tactics during the prolonged questioning, which included suggesting theories of guilt to defendant and presenting him with false evidence, rendered his admissions involuntary.
Finally, defendant challenged the admissibility of statements that he made to the police officer who stopped him on the street and transported him to the police station for the interview. The officer testified at the hearing that defendant, when asked for identifying information, provided a false name and date of birth. In his letter memorandum, defendant asserted that "it can hardly be said that these statements were 'pedigree' in nature" and, because the officer did not advise him of the Miranda rights, the statements should be suppressed.
County Court refused to suppress any of the challenged statements. In its written decision, the court determined that defendant, after being placed in the interview room and read the Miranda warnings, "unambiguously waived his rights and agreed to speak with law enforcement with apparent full knowledge of those rights." The court further determined that no force, coercion or threats thereof were exercised upon defendant to induce him to waive his rights, and that no promises were made to defendant that created a risk that he might falsely incriminate himself. According to the court, defendant was cooperative with the investigators and at no point requested an attorney or asked that questioning cease. On the last page of its decision, after having already concluded that defendant's statements to the investigators were voluntary beyond a reasonable doubt, the court stated that, "to the extent that any questions posed to [d]efendant were of a pedigree nature and/or were posed by [the officer who transported him to the police station], they are admissible as they are not subject to Miranda scrutiny or notice under CPL 710.30."
On appeal, defendant contends for the first time that the investigators subjected him to custodial interrogation for five or six minutes before reading him the Miranda warnings, and that his subsequent post-Miranda admissions should be suppressed because there was not a definite and pronounced break in the interrogation after defendant made his pre-Miranda statements. More specifically, with respect to the pre-Miranda statements made at the police station, defendant argues that a series of questions posed by the investigators after defendant said that he was homeless when asked for his address—such as, "When did you become homeless?," and, "What happened?"—constituted an improper attempt "to conduct an investigative inquiry without Miranda warnings" inasmuch as the questions were not designed to elicit mere pedigree information.
As the dissent acknowledges, defendant failed to preserve his current suppression contentions for our review. Indeed, the only ground raised below by defendant for suppression of the statements he made at the police station was that the investigators essentially tricked him into waiving his Miranda rights and later into making admissions; defendant's contention relating to pedigree information was limited to the prior statements that he made to the arresting officer, which were not admitted in evidence at trial in any event.
The dissent nevertheless concludes that defendant's contention relating to pedigree information is properly before us because the motion court "expressly decided the question raised on appeal" (CPL 470.05 [2]; see People v Prado, 4 NY3d 725, 726 [2004], rearg denied 4 NY3d 795 [2005]). We respectfully disagree. The court did not expressly determine that the questions asked of defendant by the investigators prior to the administration of Miranda warnings were pedigree in nature, or that any statements defendant made fell within the pedigree exception to the Miranda requirement (see People v Wortham, 37 NY3d 407, 413 [2021], cert denied — US &mdash, 143 S Ct 122 [2022]). Instead, as noted above, the court merely indicated that, "to the extent" that any questions sought pedigree information, defendant's answers to such questions were admissible. It appears that the court, in response to the specific contention advanced by defendant, was referring to the pedigree questions asked by the arresting officer, not the investigators. Thus, the court did not address the appropriateness of the pre-Miranda questions challenged by defendant on appeal.
Moreover, it is undisputed that defendant failed to preserve for our review his further contention that his post-Miranda admissions, which were made approximately an hour and twenty minutes after he voluntarily waived his rights, must be suppressed because there was no definite and pronounced break between the pre- and post-Miranda statements such that defendant had "returned, in effect, to the status of one who is not under the influence of questioning" (People v Chapple, 38 NY2d 112, 115 [1975]).
The question becomes whether we should exercise our power to review defendant's unpreserved contentions as a matter of discretion in the interest of justice (see CPL 470.15 [6]). Based on our review of the video recording of defendant's interview, we conclude that the pre-Miranda questions asked by the investigators did not render it any more likely that defendant would agree to waive his rights and answer further questions. We also note that "[d]efendant made no statement that was either inculpatory or related to the [homicide] until after the Miranda warnings had been properly administered by [the investigators] and after he properly waived his Miranda rights" (People v White, 10 NY3d 286, 291 [2008], cert denied 555 US 897 [2008]). [*2]Under the circumstances, and considering that defendant, as a three-time convicted felon, had extensive experience with the police and criminal justice system prior to his interview, we perceive no compelling reason to exercise our power to review defendant's unpreserved contentions as a matter of discretion in the interest of justice.
We have reviewed defendant's remaining contentions and conclude that none warrants modification or reversal of the judgment.
All concur except Montour and Ogden, JJ., who dissent and vote to hold the case, reserve decision, and remit the matter to Monroe County Court for further proceedings in accordance with the following memorandum: We respectfully dissent. Initially, we agree with the majority that defendant's omnibus motion papers and arguments to County Court were not themselves sufficient to preserve his contentions that he was subjected to a custodial interrogation prior to being read his Miranda warnings and that, therefore, both his pre- and post-Miranda statements made to investigators at the City of Rochester Public Safety Building (PSB) should have been suppressed (see generally People v Hightower, 39 AD3d 1247, 1248 [4th Dept 2007], lv denied 9 NY3d 845 [2007]). However, in its written decision, the court found that the investigators who interviewed defendant at the PSB had asked pedigree questions prior to issuing the Miranda warnings and then concluded as a matter of law that defendant's answers to the pedigree questions were admissible as an exception to the Miranda requirement. Therefore, the court expressly decided the first issue raised on appeal, thereby preserving it for our review (see CPL 470.05 [2]; People v Prado, 4 NY3d 725, 726 [2004], rearg denied 4 NY3d 795 [2005]; People v Johnson, 192 AD3d 1612, 1613 [4th Dept 2021]; People v Curry, 192 AD3d 1649, 1650 [4th Dept 2021], lv denied 37 NY3d 955 [2021]).
We agree with defendant that the court erred in concluding that the disputed pre-Miranda questions fell within the pedigree exception to the Miranda requirement. The Court of Appeals has "recognized an exception to Miranda for pedigree questions," which "typically ask a suspect for identifying information such as name, date of birth, and address," despite the fact that even those questions "constitute custodial interrogation when they are posed to a suspect in custody" (People v Wortham, 37 NY3d 407, 413 [2021], cert denied — US &mdash, 143
S Ct 122 [2022]). The exception will not apply, however, "if the questions, though facially appropriate, are likely to elicit incriminating admissions because of the circumstances of the particular case, or, stated another way, if the question is reasonably likely to elicit an incriminating response from [the] defendant" (id. at 414 [internal quotation marks omitted]; see People v Rodney, 85 NY2d 289, 293 [1995]). Here, prior to administering the Miranda warnings, the investigators asked defendant questions that were likely to elicit an incriminating response and constituted interrogation under the guise of obtaining pedigree information (see People v Walker, 129 AD3d 1590, 1591 [4th Dept 2015]; cf. Rodney, 85 NY2d at 294).
In light of the court's ruling that the disputed pre-Miranda questions were pedigree questions for which no Miranda warnings were necessary, it had no reason to address the second issue, i.e., whether defendant's post-Miranda statements were admissible despite the pre-Miranda interrogation. That specific contention is unpreserved (see Hightower, 39 AD3d at 1248), and we conclude that we may not consider it inasmuch as "we have no power to review issues not ruled upon by the trial court" (People v Clark, 171 AD3d 1530, 1532 [4th Dept 2019]; see CPL 470.15 [1]; People v Concepcion, 17 NY3d 192, 195 [2011]). We would therefore hold the case and remit the matter to County Court for a ruling on that issue. In light of our determination, it is not necessary to review defendant's remaining contentions.
Entered: June 30, 2023
Ann Dillon Flynn
Clerk of the Court